**FEDERAL DEPOSIT INSURANCE COR-PORATION, in its Corporate Capacity as Liquidator of Liberty National Bank, Plaintiff,**

v.

**SOUTHWEST MOTOR COACH CORPORATION, et al.,**
**Defendants.**

**No. CA 3–91–1079–T.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 26, 1991.

Michael Robert Swan, FDIC Legal Div., Dallas, Tex., for plaintiff.

Albert G. McGrath, Jr., Holmes, Millard & Duncan, Dallas, Tex., for defendants Southwest Motor Coach Corp., Charles Lambert, Les T. Sandknop, Leslie T. Hansen, II and Danny E. Stone.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

This matter is before the court on Plaintiff's September 11, 1991 Motion for Summary Judgment, or Alternatively, Motion for Default Judgment. Defendants Southwest Motor Coach Corporation (Southwest Motor Coach), Les T. Sandknop, Leslie T. Hansen, II and Danny Stone responded to the motion on October 15, 1991. Defendant John Spencer has not responded to the motion. Plaintiff replied to Defendants' response on December 18, 1991. The court, having considered the motion, the response, and the reply, is of the opinion that the motion should be granted.

## BACKGROUND

Plaintiff Federal Deposit Insurance Corporation (FDIC) filed this action seeking to recover on a promissory note and related guaranty agreements. On May 25, 1989, the Comptroller of the Currency, pursuant to 12 U.S.C. §§ 191 and 1821(c), declared Liberty National Bank insolvent and appointed the FDIC as receiver. Thereafter, the FDIC as receiver conveyed certain assets of Liberty National to the FDIC in its corporate capacity. Among the assets transferred was a promissory note (Southwest note) executed by Southwest Motor Coach in favor of Liberty National dated January 10, 1989. The original principal amount of the Southwest note was $60,000, bearing interest at the rate of Liberty Na-

tional prime plus 2% per annum. The Southwest note was an extension and renewal of a note (Rockwall note) previously executed on July 10, 1988, in Liberty National's favor by Rockwall Classics, Inc., the predecessor corporation to Southwest Motor Coach. The Southwest note matured by its own terms on July 10, 1989, and Southwest Motor Coach has failed to pay the amounts due.

On January 10, 1989, the individual defendants Les T. Sandknop, Danny E. Stone, and Leslie T. Hansen II, executed and delivered to Liberty National guaranty agreements (1989 guaranty agreements) under which they guaranteed payment of the Southwest note and any renewals and extensions thereof. On January 14, 1988, Defendant John Spencer executed and delivered to Liberty National a guaranty agreement (1988 guaranty agreement) under which he guaranteed payment of the Rockwall note and any renewals and extensions thereof. These individual defendants have failed to make payment of the amounts due under the Rockwall note, the Southwest note, and the guaranty agreements.

FDIC alleges that as of August 31, 1991, the outstanding balance of unpaid principal and accrued but unpaid interest under the Southwest note was $71,220.23, with interest accruing at a rate of $18.12 per day. FDIC asserts in its motion that it is entitled to judgment on all amounts due under the Southwest note and the guaranty agreements, including interest through the date of the judgment and post-judgment at the highest rate permitted by law. FDIC also seeks to recover its attorneys' fees. The responding defendants have raised three arguments which they contend preclude summary judgment: (1) FDIC has failed to establish through admissible evidence that it is the owner and holder of the Southwest note and guaranty agreements; (2) the defense of usury is available to Southwest Motor Coach and the individual guarantors because interest has been charged by the FDIC in an amount in excess of that authorized by law; and (3) the guaranty agreements are unenforceable due to a failure of consideration. Plaintiff has responded to

these arguments in its reply. The court will address each of Defendants' arguments accordingly.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be entered where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

## DISCUSSION

### I

Defendants first argue that FDIC has failed to establish through admissible evidence that it is the owner and holder of the Southwest note and the underlying guaranty agreements. Defendants do not, however, attempt to establish why the evidence submitted by FDIC is inadmissible. The court, having reviewed the competent summary judgment evidence submitted by FDIC in its motion and its reply, concludes that there is no genuine issue of material fact as to whether FDIC is the owner and holder of the Southwest note and the underlying guaranties.

### II

Defendants next argue that there is a genuine issue of material fact as to whether FDIC has charged usurious interest, in violation of Tex.Rev.Civ.Stat.Ann.

art. 5069–1.01 *et seq.* (West 1987). Under Texas law, a lender commits usury when it contracts for, charges or receives interest which is greater than the amount authorized by Texas law. *Id.* art. 5069–1.06. Interest on the Southwest note was to be calculated at the stated prime rate of Liberty National bank plus 2%. Defendants argue that, because Liberty National was declared insolvent and FDIC was appointed receiver, there was no Liberty National prime rate with which to calculate interest under the Southwest note, and interest should have been zero plus 2%. FDIC admittedly charged interest above 2%, and Defendants argue that this subjects FDIC to the penalties established in article 5069–1.06, Tex.Rev.Civ.Stat.Ann. The court is unpersuaded by Defendants' argument.

Defendants offer no legal support for their argument that "[T]he charging of interest in excess of 2% is a violation of the applicable usury laws." Texas law provides that no person shall contract for, receive or charge interest which is greater than that allowed by Texas law. *Id.* Defendants have failed to offer competent summary judgment proof that the interest charged by FDIC was in excess of that allowed by Texas law; therefore, the court concludes that no usury occurred.

Even assuming a usury violation occurred, the FDIC is immune from usury penalties under the doctrine of sovereign immunity. The United States and its agencies are immune from suit except to the extent that such immunity has been waived. *Loeffler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988). This immunity extends to the imposition of punitive fines. *Missouri Pac. R.R. Co. v. Ault*, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087 (1921). The Sixth Circuit held, in *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240 (6th Cir.1989), that the FDIC was immune from the penalties imposed by Tennessee law for refusal to release a deed of trust. *Id.* at 1247. The court stated, "since the [plaintiff] has failed to identify any express Congressional authority permitting imposition of punitive fines or penalties against the FDIC under state law, the mandate of *Ault* and

its progeny compels the conclusion that [the plaintiff] cannot recover such penalties pursuant to Tenn.Code Ann. § 66–25–102 (1982)." *Id.* at 1248.

The remedies under the Texas usury statutes are penal in nature, and constitute penalties for the charging of usurious interest. *Steves Sash & Door Co. v. Ceco Corp.*, 751 S.W.2d 473, 476–77 (Tex.1988). Defendants have failed to establish that Congress has expressly authorized the imposition of penalties for usury against FDIC. In fact, Congress has shown a contrary intent by enacting 12 U.S.C. § 1823(d)(3)(A) which provides, "[W]ith respect to any asset acquired or liability assumed ... the [FDIC] shall have all the ... privileges ... of the Corporation as receiver under sections 1821 and 1825(b) of this title." Section 1825(b)(3) provides, "[T]he Corporation shall not be liable for any amounts in the nature of penalties or fines...." Therefore, the court concludes that because FDIC is immune from the penalties imposed by the Texas usury laws, even if Defendants' second argument raised an issue of material fact regarding usury, this would not preclude summary judgment.

### III

■ Sandknop, Hansen and Stone argue that the 1989 guaranty agreements are unenforceable due to failure of consideration. Their position is that they guaranteed an indebtedness that had already matured, and that this benefitted only Liberty National and the three individuals who guaranteed the Rockwall note. The court disagrees with the argument of these defendants for two reasons. First, the Southwest note was a renewal and extension of the Rockwall note. The consideration given for the 1989 guaranty agreements was this extension and renewal. Second, the guaranties specifically acknowledge receipt of consideration. The guaranties provide, "FOR THE SUM OF ONE DOLLAR, and other valuable consideration, receipt of which is hereby acknowledged, I, we, or either of us, hereinafter called Guarantors, hereby agree, jointly and severally, to pay

to LIBERTY NATIONAL BANK ... [indebtedness to Liberty National incurred by Southwest Motor Coach corporation]...." Any evidence that this was not the true intent of the parties would be barred by the doctrine set forth by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). This doctrine is a rule of estoppel which prevents those who execute documents evidencing an indebtedness owing to a federally insured bank from raising defenses with respect to the enforceability of those documents based upon an alleged "scheme or arrangement" whereby the banking authority was, or was likely to be, misled. *Id.*

### IV

■ The court concludes that as the prevailing party in this action, Plaintiff is entitled to its attorneys' fees incurred in pursuit of this litigation. Plaintiff's attorneys have failed, however, to submit contemporaneous time records by which this court can make a determination regarding the reasonableness of the attorneys' fees requested. *See* Standing Order No. 1 § 10.1.1(1); and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Plaintiff shall have 20 days from the file date of this order in which to submit such records.

### CONCLUSION

The court concludes that Plaintiff has established that there are no genuine issues of material fact that preclude summary judgment.

It is therefore ORDERED that Plaintiff's September 11, 1991 motion for summary judgment is granted, and that Plaintiff Federal Deposit Insurance Corporation, in its corporate capacity as liquidator of Liberty National Bank, shall have judgment against Defendants Southwest Motor Coach Corporation, Les T. Sandknop, Leslie T. Hansen II, Danny E. Stone, and John Spencer, jointly and severally, on the Southwest note and the 1989 guaranties in the amount of $73,195.31 plus pre-judgment interest accruing at the per diem rate of $18.12 from December 18, 1991, until judgment is entered, plus post-judgment interest at the rate of 4.41% accruing after entry of judgment until paid, and costs of court.