## In re Rudolph S. FULTON, Debtor.

### Bankruptcy No. 91–47593–H5–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 17, 1992.

---

Yvonne Knesek, London & Fant, Houston, TX, for debtor.

Clinton L. Franklin, Akin Gump Stauss Hauer & Feld, Houston, TX, for Riggs Nat. Bank of Washington, D.C., creditor.

1. Debtor's mortgage debt to the first and second lenders on his homestead is paid outside of

FINDINGS OF FACT AND
CONCLUSIONS OF
LAW

KAREN KENNEDY BROWN,
Bankruptcy Judge.

A trial was conducted on October 29, 1992, on debtor's objection to the claim of Riggs National Bank ("Riggs") and Riggs' objection to confirmation of debtor's chapter 13 plan. After due consideration, this Court has concluded that this case should be resolved in the following manner. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and 157(b)(1), (b)(2)(A), (B), and (L). This is a core proceeding.

## I.

### A. Confirmation Arguments

. Debtor, Dr. Rudolph Silas Fulton, is a dentist who teaches at the University of Texas Dental School and has a part-time dental practice. He testified that he earned approximately $71,000.00 in income last year. This figure appears to include the amount earned by his wife who did not join in the filing of this bankruptcy. Debtor's first amended chapter 13 plan summary shows total monthly income of $5,400.00 and total monthly expenses of $4,700.00, leaving $700 per month for distribution through the plan. The plan provides for payment over 46 months of a total of $32,200.00 with a net available to creditors of $28,980.00. The total amount of secured and priority claims is shown as $25,832.10,[1] the total unsecured claims is $2,800.00, and the plan proposes to pay 100% of unsecured claims. The debtor scheduled the debt of the National Bank of Washington (Riggs) as $79,700.00, disputed, noting that "any duly proven and allowed claim shall receive prorata distribution through debtor's chapter 13 plan after satisfaction of all priority and secured claims."

Riggs filed a proof of claim in the total amount of $82,997.00 based on a judgment

plan.

consisting of $34,700.00 in principal, $45,000.00 in attorneys fees, $1,637.50 in court costs, and $1,659.50 in interest. The judgment is the result of a jury trial held in the 215th Judicial District Court of Harris County on June 16, 1991, concerning the default of debtor's company, American Dental, Inc., on a commercial lease for premises in downtown Houston. The basic rent under the agreement was $1,300.00 per month. The lease was a three-year lease with a target commencement date of June 15, 1987, with payments to start November 1, 1987. The lease was to terminate June 30, 1990. The Debtor defaulted June 8, 1988. The parties agree that on the date of default debtor was $900.00 in arrears. In addition, debtor owed a lease cancellation fee of $2,600.00 and common area maintenance expenses of $368.00.

Debtor's Schedule of Exemptions lists 50% interests in his homestead, qualified retirement plans, individual retirement accounts, household goods and other itemized personal property, three cars, current wages and real property and improvements located at 8715 Leamont, Houston, Texas. Debtor lists the Leamont property at a value of $14,000.00 with no equity.

Riggs objects to the confirmation of debtor's chapter 13 plan alleging that: (1) that the plan violates Section 1325(a)(3) because it is proposed in bad faith; (2) the plan violates Section 1325(a)(5) because it fails to treat Riggs' claim as a secured claim; (3) that it violates Section 1325(a)(4) because Riggs as the holder of an unsecured claim would receive more in a chapter 7 liquidation of the debtor than it would under the plan; and (4) that it violates Section 1325(a)(1) because debtor failed to file appropriate schedules or make required disclosures. Riggs claims debtor has failed to schedule all of his interests in real property, specifically, a townhouse located at 7107 Westbranch, Houston, Texas, as well as his entire community property interests. Riggs further claims that Debtor has failed to list all of his liabilities, specifically, a debt owed to the First National Bank of Missouri City incurred in connection with the townhouse at Westbranch. Riggs asserts that the plan incorrectly proposes a 100% payout to unsecured creditors.

### B. Bad Faith Issue

■ In support of its allegations, Riggs contends that this bankruptcy is a bad faith filing barred by *In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir.1986). Riggs claims that *Little Creek* and the instant case present identical factual scenarios. Riggs asserts that it obtained a state court judgment against debtor who, having few other debts, filed bankruptcy to avoid paying Riggs.

However, many factors distinguish this case from those in *Little Creek*, not the least of which is that this case concerns an individual wage earner supporting five dependents rather than a single asset real estate company with little or no cash flow and no income to sustain a plan of reorganization. The debtor in *Little Creek* was simply trying to forestall the inevitable foreclosure of its property by its mortgagor. By contrast, debtor testified that he has recently undertaken the support, education, and transportation expenses of his daughter as well as the child care expenses of her two children due to her divorce and resumption of school. Debtor credibly testified that he was just barely able to keep up with his expenses and needed to file not only due to Riggs' judgment but to make adequate arrangements to repay his ordinary debts. Debtors' Monthly Family Budget filed in his case is consistent with his testimony. The Court concludes that *Little Creek* affords little, if any, support to Riggs' bad faith argument.

### C. Secured Status of Riggs' Claim

■ Riggs argues that its claim is secured by virtue of its abstract of judgment to the extent of debtor's equity in the real property located at 7107 Westbranch, Houston, Texas, the real property at 8715 Leamont, Houston, Texas, and in debtor's automobiles. Riggs' abstract of judgment does not attach to debtor's personal property, only realty. *Fore v. United States*, 339 F.2d 70 (5th Cir.1964). Therefore, Riggs is not secured by the equity in debtor's automobiles.

As to the property at Leamont and the automobiles, debtor lists these properties as exempt, showing no equity in the real property and equity of $687.50 in one automobile. No objection was made to debtor's exemptions, and the time period for objecting to exemptions has passed. Therefore, debtor's exemptions are allowed. *Taylor v. Freeland & Kronz,* ── U.S. ──, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Under Bankruptcy Code section 522(f)(1), Riggs' claimed judicial lien is avoidable to the extent it impairs an exemption otherwise available to the debtor. Since debtor has claimed these properties as exempt, Riggs' claimed judicial lien is avoidable.

Lastly, no showing was made at trial to dispute debtor's valuation of and claimed lack of equity in the real property. Pursuant to Bankruptcy Code section 506, Riggs' claim is secured only to the extent of the value of such creditor's interest in the estate's interest in property and is an unsecured claim to the extent that the value of its interest is less than the amount of such allowed claim. Since the estate's interest in the Leamont real property is zero, Riggs has an unsecured claim.

As to the property located at 7107 Westbranch, the testimony at trial showed that in the summer of 1988, Dr. Fulton was approached by his dental assistant, Roya Hashemi, for assistance in purchasing the townhouse located at 7107 Westbranch. Ms. Hashemi's husband, Ali Bipar, was a medical student at the time and neither of them were then citizens of the United States. Although they had a substantial down payment for the townhouse, they were unable to obtain a mortgage. Dr. Fulton referred Hashemi and Bipar to Willard Kenneth Hutto, the president of the First National Bank of Missouri City. Mr. Hutto reviewed the transaction and determined that he was unable to make a loan directly to the Bipars but agreed to loan $10,000.00 toward the purchase price to Dr. Fulton. The bank structured the financing for the purchase of the property so that it would be made upon the basis of debtor's credit but would vest title to the property in Ali A. Bipar and Roya Hashemi. Mr. and Mrs. Bipar paid $12,000.00 down on the property and all subsequent payments as well as all payments for taxes and insurance. They are not in default on this obligation. The amount remaining due is $1,722.09, plus $5.89 interest as of November 19, 1992. The last payment on this note is due July 19, 1993. The Bipars have lived on the property since the inception of the purchase.

The documents executed by the parties to arrange the financing are: (1) a promissory note from debtor to First National Bank of Missouri City; (2) a deed of trust by debtor to Ken Hutto, trustee, in favor of First National Bank of Missouri City as beneficiary; (3) an Assignment of Contract of Sale and Leases executed by debtor in favor of the bank transferring all rights the debtor had in the contract for deed executed by Bipar and Hashemi; (4) the contract for deed executed by Bipar and Hashemi as purchasers, debtor as seller, and First National Bank of Missouri City as bank, containing an agreement by purchasers to pay the purchase price with payments going to the bank; (5) a Special Warranty Deed with Vendor's Lien executed by University Savings Association as grantor to debtor as grantee retaining a vendor's lien and superior title to the property in favor of grantor until the promissory note is paid in full, with an assignment of the vendor's lien and superior title to First National Bank of Missouri City, the payee under the promissory note; and (6) two Assignments of Life Insurance Policy as Collateral assigning to the bank life insurance policies on the lives of Bipar and Hashemi. The Contract for Deed recites that at the time of the execution of that document, debtor executed a warranty deed in favor of Bipar and Hashemi conveying good and marketable title to the property which deed is to be held in escrow by the bank to be delivered to Bipar and Hashemi upon payment in full of the purchase price. Although all of these documents were executed contemporaneously in July 1988, the Contract for Deed was not recorded until 1992, after the recordation

of Riggs' abstract of judgment on August 26, 1991.

Under this arrangement, Bipar and Hashemi obtained superior, enforceable equitable rights to the property from the inception of the purchase. *Leeson v. City of Houston,* 243 S.W. 485 (Tex.Comm'n App.1922, judgment adopted); *Fant v. Howell,* 410 S.W.2d 294 (Tex.Civ.App.—Austin 1966, writ dism. w.o.j.). Furthermore, First National Bank of Missouri City retains superior legal title to the property by virtue of the vendor's lien and deed of trust until the note is paid in full. *See Humphreys-Mexia Co. v. Gammon,* 254 S.W. 296 (Tex.1923); *Williams v. Ballard,* 722 S.W.2d 9 (Tex.App.—Dallas 1986); *Stevenson v. Lohman,* 218 S.W.2d 311 (Tex. Civ.App.—Beaumont 1949, no writ); *Miller v. Linquist,* 141 S.W. 170 (Tex.Civ.App.—Ft. Worth 1911, no writ).

■ Texas law holds that equitable title acquired independent of legal title is not subject to or governed by the registration statute and the superiority of such a title may be asserted against a judgment lien creditor even though he had no notice of the equitable title at the time of fixing his lien. *Texas American Bank/Levelland v. Resendez,* 706 S.W.2d 343 (Tex.App.—Amarillo 1986, no writ). Further, "[i]t is well settled that an open, exclusive, and visible possession of the premises ... at the time when the right of a creditor attaches, is notice of the right under which it is held." *Id.* at 347. Moreover,

> ... [I]t is well settled that a judgment lien on the land of a debtor is subject to every equity which existed against the lands in the hands of the judgment debtor at the time of the rendition of the judgment. And courts of equity ... will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor has in the estate.

*Lusk v. Parmer,* 114 S.W.2d 677, 682 (Tex. Civ.App.—Amarillo 1938, writ dism. w.o.j.); *see also Park Central Bank of Dallas v. JHJ Investments Co. of Little Elm,* 835 S.W.2d 813 (Tex.App.—Ft. Worth 1992).

■ Consequently, the Court finds that debtor has at best bare legal title to the property. Therefore, Riggs has no secured claim to this property and debtor's failure to schedule the property was not an act of bad faith. Under the facts of this case, the property at 7107 Westbranch is equitably owned by the Bipars with superior legal title held by the First National Bank of Missouri City. The Court finds that the value of the estate's interest in this property, in accordance with Texas law, is zero. Therefore, under section 506, Riggs has no secured claim. Debtor testified that he always believed he had no interest in this property and believed that the bank structured the loan so that debtor would not have an interest. The Court finds that under the facts of this case the failure to list the property and the failure to list the associated debt to the bank were not acts of bad faith.

### D. Conclusions Regarding Confirmation

■ The Court concludes that Riggs does not have a secured claim. Therefore, the plan does not violate section 1325(a)(5). The Court finds that in a Chapter 7 liquidation, Riggs would receive nothing since exemptions have been allowed and debtor has no non-exempt property. Further, any property claimed exempt to which objection could have been made, e.g. the property on Leamont, has no equity which could have been liquidated for the benefit of unsecured creditors. Based on the foregoing, the plan does not violate section 1325(a)(4).

As to Section 1325(a)(3), the Court finds the debtor has filed bankruptcy in an effort to make adequate arrangement for the payment of his debts, there has been no showing of bad faith in the filing of this case or the proposal of the plan.

Riggs complains that debtor's scheduling of only his 50% interest in community property (as well as the real property at 7107 Westbranch dealt with *supra*) is an act of bad faith and violates section 1325(a)(1). While it would have been preferable for debtor to cast his schedules differently, a fair reading shows that community nature of the interest was intended to be listed.

The Court finds that under the totality of the circumstances of this case, debtor's failure to list his non-filing wife's community interests does not support a finding of bad faith and that the plan does not, under these circumstances, violate section 1325(a)(1).

## II.

### A. Debtor's Objection to Claim of Riggs

Debtor objects to Riggs' proof of claim arguing that Bankruptcy Code section 502(b)(6) limits the amount which can be claimed for damages due to a default in a lease and that Riggs' attorneys fees should be included in the cap. Debtor cites to *In re Weeks*, 28 B.R. 958 (Bankr. W.D.Okla.1983) and *In re Storage Technology Corp.*, 77 B.R. 825 (Bankr.D.Col.1986) in support of his argument. Debtor further claims the right to offset his $1,300.00 security deposit against the $15,600.00 he calculates is due, citing *In re Atlantic Container Corp.*, 133 B.R. 980 (Bankr. N.D.Ill.1991).

■ Riggs responds arguing that its claim, having been reduced to judgment, is not subject to the cap established by section 502(b)(6). Riggs argues that its judgment is res judicata to any subsequent action by the debtor, raising the same claims that were raised in the trial which resulted in the judgment; that debtor is collaterally estopped from raising any issues which were adjudicated and ultimately determined by the jury in the state court trial or in the judgment; and that the debtor may not collaterally attack the judgment.

Nevertheless, the Court finds these preclusion doctrines inapplicable to the instant matter because application of Bankruptcy Code section 502(b)(6) was neither at issue in the state court trial, nor is debtor seeking a collateral attack on the judgment.

Riggs further argues that the court is barred by the doctrine of merger from looking to the claims upon which the judgment is based. The doctrine of merger, Riggs argues, extinguished Riggs' original claim and merged it into the judgment so that all of Riggs' claims for rent, breach of contract, and payment of attorneys' fees and costs lost their individual characteristics and identities. However, the doctrine of merger and bar similarly do not determine this issue because under the transactional approach adopted by the Texas Supreme Court,[2] the parties must have been able to litigate the same issue in the prior proceeding.

### B. Conclusions Regarding Riggs' Claim

Section 502(b)(6) provides that the court shall allow claims as of the date of petition filing:

except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates.

■ While on its face, the statute does not address the effect of a final judgment, current case law indicates that section 502(b)(6) applies even in the face of a final state court judgment. As Riggs is aware, this Court has previously ruled in an unpublished opinion in the case of *In re Valdez*, No. 91–44834–H5–13, that the bankruptcy court must look beyond the face of a state court judgment to determine the applicability of section 502(b)(6) and, further, that the lessor's attorney's fees are subject to the cap. *See In re Bus Stop,*

---

2. In *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 639 (Tex.1992) the court found "... [A] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit."

*Inc.*, 3 B.R. 26 (Bankr.S.D.Fla.1980); *In re Weeks*, 28 B.R. 958 (Bankr.W.D.Okla.1983); *In re Thompson*, 116 B.R. 610 (Bankr. S.D.Ohio 1990). *See also Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 223 (2nd Cir.1957), citing *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("A bankruptcy court may inquire into the validity of any claim asserted against the bankrupt and may disallow it if it is found to be without lawful existence and the mere fact that a claim has been reduced to judgment does not prevent such an inquiry.") *In re Storage Technology Corp.*, 77 B.R. 824, 825 (Bankr.D.Colo.1986) (attorney's fees not included in calculating damages as part of rent reserved); *In re Hecks, Inc.*, 123 B.R. 544, 546 (Bankr.S.D.W.Va.1991) (electrical repairs and other expenses are not elements of rent used to calculate maximum claim); *In re Atlantic Container Corp.*, 133 B.R. 980, 986–87 (Bankr.N.D.Ill.1991) (costs incurred in attempting to relet the property, such as costs of remodelling or reconstruction, constitute damages resulting from termination of a lease).

The amount of Riggs' claim including attorney's fees, therefore, is limited to the cap of section 502(b)(6). In this case the greater amount allowed under section 502(b)(6) is the amount of one year of rent which is $1,300 times 12, or $15,600.00. Riggs is also entitled to unpaid rent as of the date on which it repossessed the property or the lessee surrendered which is debtor's arrearage of $900.00, plus common area maintenance expenses of $368.00 for a total of $1,268.00. The Court finds that the lease cancellation fee of $2,600.00 is a penalty and is not rent under section 502(b)(6)(B) to which Riggs would be additionally entitled. The Court further finds that debtor may offset his security deposit of $1,300.00 against the claim of Riggs, since there was no allegation that the premises were left in defective condition.

In summary, the following is Riggs' maximum allowable claim:

| | |
|---|---|
| 1 year of rent, $1,300 × 12 = | $15,600.00 |
| arrearage | $ 900.00 |
| common area maintenance | $ 368.00 |
| less security deposit | ($ 1,300.00) |
| Total | $15,568.00 |

This Court ORDERS that Riggs' Objection to the Confirmation of the Chapter 13 Plan is overruled. The Court further ORDERS that debtor's objection to Riggs' claim is sustained and ORDERS that Riggs' claim shall be unsecured and allowed in the amount of $15,568.00.