In re John Nicholas SHEETS, Debtor.

Steven S. Turoff, Plaintiff,

v.

John Nicholas Sheets, Eleanor Mowery–Sheets, Eleanor Mowery–Sheets, Inc., Urban One Holding, L.P., Urban One, Inc., John Christian Mowery, Kathy Hewitt, Paige Compton, Robert Kucharski, Steve Habgood, John Whiteside, Kyle Byrom, NRT Texas, Inc., Countrywide Home Loans, Inc., Internal Revenue Service, Michael Allen Singleton, Dora Jane Flowers, Lorna Jean Singleton, and Lana Lee Dunn, Defendants.

Bankruptcy No. 01–31878–RCM–11.
Adversary No. 01–3620.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 4, 2002.

James D. McCarthy, Eric D. Madden, Diamond McCarthy, Dallas, TX, for plaintiff.

Lynn Hamilton Butler, Hance Scarborough, Austin, TX, Robert A. Miller, Prager Metzger, Dallas, TX, Rosa Jean Y. Bryant, Barrett Burke, Houston, TX, Harlin DeWayne Hale, Baker & McKenzie, Dallas, TX, Ramona Stephens Notinger, Department of Justice, Dallas, TX, Robert K. Whitt, Midland, TX, John B. Schorsch, Jr., Mastrogiovanni Schorsch, Martin K. Thomas, Dallas, TX, Gerald K. Fugit, Odessa, TX, for defendants.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Bankruptcy Judge.

On January 23, 2002, came on to be heard Trustee Steven S. Turoff's ("Trustee") Motion for Partial Summary Judgment and Defendants Urban One Holding, L.P., Urban One, Inc., Paige Compton Whiteside, Kathy Hewitt, Robert Kucharski, Steve Habgood, Kyle Byrom, and John Whiteside's (collectively "Urban One Partners") Motion for Summary Judgment. The Court has core jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (E), (K), and/or (O) (admitted by Urban One Partners). The following are the Court's findings of undisputed facts and conclusions of law under Bankruptcy Rule 7052.

### Undisputed Facts

Debtor Sheets ("Sheets") is a real estate broker for Defendant Coldwell Banker Residential Brokerage ("Coldwell Banker"). Sheets filed his Voluntary Petition for Chapter 11 bankruptcy on March 6, 2001.

On June 25, 1999, Sheets entered into a Contract for Deed [1] with Defendant Urban One Holding, L.P. for the sale of certain real property located on Harwood Street in Dallas, Texas (the "Harwood Property"). (Trustee's App. Tab 9 Exhibit ("Ex.") 16.); (Urban One Partners' App. at pp. 10–18.) On that date, Urban One Holding, L.P. was owned by the following entities/individuals in the stated percentages:

1. Urban One, Inc.—50%

2. Kathy Hewitt—5.555%

3. Paige Compton—11.111%

4. Robert Kucharski—5.555%

5. Steve Habgood—5.555%

6. John Whiteside—11.111%

7. Kyle Byrom—5.555%

8. Christian Mowery—5.555%

(Trustee's App. Tab 9 Ex. 10.)

Urban One, Inc. is the general partner of Urban One Holding, L.P. (Id.) Urban One, Inc. was registered with the Texas Secretary of State on May 27, 1999. (Trustee's App. Tab 9.); (Urban One Partners' App. at p. 6.) On May 27, 1999, the record reflects that Sheets was the 100% shareholder of Urban One, Inc. (Trustee's App. Tab 9 Ex. 24.)

On June 28, 1999, Sheets purchased the Harwood Property from Thad Baker ("Baker"). (Urban One App. at pp. 19–23.) The Warranty Deed transferring ownership of the property carried with it a first lien in favor of AMRESCO Residential Mortgage Corporation ("AMRESCO") and Baker in the amount of $273,750.00 and a second lien in favor of Baker in the amount of $40,000. (Id.)

The first lien with AMRESCO was secured by a Note and a Deed of Trust. The relevant portions of the Deed of Trust read as follows:

> BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower

---

1. Although the Trustee refers to "secret contracts, backdated documents, post-petition transfers (and other suspect asset transfers and dispositions), and outright, unapologetic, and blatant lies" in his brief, (see Chapter 11's Trustee's Br. in Supp. of Mot. for Partial Summ. J. at p. 1), the thrust of Trustee's motion seeks to avoid the Contract for Deed.

(Pervasive, vituperative comments throughout the briefs are needless distractions to careful legal analysis of issues). Therefore, it is assumed, solely for the purposes of Trustee's Motion for Partial Summary Judgment and this resulting Memorandum Opinion, that Trustee does not dispute that the Contract for Deed is a valid contract.

warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

\* \* \*

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest is sold or transferred ... without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(Trustee's App. Tab 9 Ex. 21; Urban One Partners App. at pp. 24, 27.)

In turn, Coldwell Banker leased the Harwood Property from Urban One Holding, L.P. on July 1, 1999. (Urban One Partners App. at pp. 41–65.) The rent was in an amount equal to the mortgage on the Harwood Property. Urban One Holding, L.P. represented and warranted that "it has good and marketable fee title" to the Harwood Property. (Urban One Partners App. at p. 46.)

Christian Mowery, Sheets's stepson, later assigned his interest in Urban One Holding, L.P. to the other limited partners. (Trustee's App. Tab 9 Ex. 3.) Also, the remaining limited partners purchased the outstanding shares (10,000 shares of common stock) of Urban One, Inc. from Eleanor Mowery Sheets, Sheets's wife.[2] (Trustee's App. Tab 9 Ex. 4.) Although the Stock Purchase Agreement and the Assignment of Limited Partnership Interest state that they are "[e]ffective January 1, 2000," Defendants Paige Whiteside and Kathy Hewitt did not execute the assignment and stock purchase agreement until April, 2001, more than one month after Sheets filed his Voluntary Petition. (Trustee's App. Tab 9 Exs. 3, 4.)

Defendant Kathy Hewitt ultimately paid off the Baker Note, in the amount of $40,000 plus interest, on or about January 11, 2000. (Trustee's App. Tab 7 Ex. 34.) In a letter agreement, Sheets agreed to either assign a respective percentage of his ownership "in Urban One Holding, L.P.," or to repay Hewitt by March 12, 2000. (Id.) It is unclear from the record whether he repaid Hewitt; however, the April, 2001 Assignment of Limited Partnership reflects that Hewitt only owned 20% of Urban One, L.P. after Christian Mowery's assignment and the remaining partners' alleged purchase of the outstanding shares in Urban One, Inc. (Trustee's App. Tab 9 Ex. 3.)

### Summary of the Motions

The Trustee seeks partial summary judgment pursuant to § 544(a)(3) avoiding any interest in the Harwood Property claimed by Urban One Partners. Urban One Partners seeks summary judgment on the grounds that the Trustee must either assume or reject the contract for deed

---

**2.** The record reflects that Eleanor Mowery Sheets attained her alleged interest in Urban One, Inc. on or about May 29, 1999 in an alleged stock transfer from Sheets. (Trustee's App. Tab. 8 Ex. 5.)

under § 365(i)[3], but cannot avoid Urban One Partners' interest in the Harwood Property.

### Summary Judgment Standard

Rule 7056 of the Bankruptcy Rules provides that summary judgment is appropriate if there is no genuine dispute over any material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56.

The summary judgment procedure is "an integral part of the federal rules as a whole, which [is] designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 1). Under Rule 56(c), brought forward in Bankruptcy Rule 7056(c), summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify what facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *FDIC v. SW Motor Coach Corp.,* 780 F.Supp. 421, 422 (N.D.Tex.1991).

A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505;

*Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1413 (5th Cir.1993) ("mere disagreement" between parties is not enough to create genuine dispute). "Stated another way, 'if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Epps v. NCNB Texas Nat'l Bank,* 838 F.Supp. 296, 299 (N.D.Tex.1993) (quoting *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991)). However, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990).

Once the movant has made a proper motion, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co.,* 475 U.S. at 585–86, 106 S.Ct. 1348. The non-movant must raise more than a mere scintilla of evidence, and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348.

### Section 544, Section 365 and the Contract for Deed

Section 544(a) gives either the trustee or the debtor in possession the rights or powers of certain hypothetical entities as of the petition date, without regard to any knowledge of such trustee or of any creditor.[4]

---

**3.** The parties did not argue or present evidence regarding whether the provisions of § 365(i) or (j) are applicable, therefore, the Court does not rule on the applicability of either subsection of § 365 to this case; however, the Court will, as necessary, provide analysis under both sections.

**4.** Section 544(a) states in relevant part that

The trustee shall have, as of the commencement of the case, and without regard

to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\* \* \*

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and

■ Section 365, on the other hand, provides that the trustee, subject to court approval, may assume or reject any executory contract of the debtor. A contract for deed is an executory contract subject to the provisions of § 365. *In re Von Keisler,* 166 B.R. 620 (Bankr.N.D.Tex.1994); *In re Waldron,* 65 B.R. 169 (Bankr. N.D.Tex.1986); *In re Finley,* 138 B.R. 181 (Bankr.E.D.Tex.1992); *Rancho. Chamberino v. B.F.W. Enterprises (In re Rancho Chamberino),* 89 B.R. 597 (W.D.Tex.1987).

■ Section 365 then addresses specifically the rights of the party whose contract for deed (or lease) was rejected. Section 365 addresses two different factual scenarios. First, it provides that if the trustee rejects an executory contract of the debtor for the sale of real property under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property. 11 U.S.C. § 365(i)(1). If the purchaser opts to remain in possession, he or she must continue to make payments due under the contract. Thereafter, the trustee must deliver title to the purchaser under the terms of the contract.

In the alternative, if the purchaser is not in possession of the real property, or if the purchaser opts to simply treat the contract as terminated, the Code grants the purchaser a lien on the debtor's interest in the subject property in an amount equaling that portion of the purchase price the purchaser paid. 11 U.S.C. § 365(j).

Sections 365(i) and 365(j) ... give special treatment to nondebtor vendees of land sale contracts. They were passed in response to the plight of nondebtor vendees under former law. In *In re New York Investors Mutual*

*Group,* 143 F.Supp. 51 (S.D.N.Y.1956), the debtor contracted to sell land to a buyer for $105,000. There was a down payment of $15,000 with the balance due at closing in 18 months. Prior to closing, debtor was adjudicated bankrupt. The trustee sought and the referee ordered rejection of the contract with buyer. This order was affirmed on appeal. The court ruled that the interest of buyer was subject to rejection by the trustee and that the remedy of buyer "is a claim for damages for breach of the agreement." Thus buyer, who under state law may have owned the land, was relegated to the status of an unsecured creditor.[4] *New York Investors* was followed. But there was some uneasiness over its result, and some courts moved to soften its impact.

Meanwhile, reformers sought change. The Commission spearheaded this movement and Sections 365(i) and 365(j) evolved from its report, which in turn, was derived from a working paper, later published as Lacy, "Land Sale Contracts in Bankruptcy," 21 U.C.L.A. L.Rev. 477 (1973).

The method for apportioning the benefits and burdens of insolvency, Lacy wrote, cannot be found through "definitions of 'executory'.... Instead, the search should be for a policy which defines those interests of present or potential value which may properly be taken from others for the benefit of the bankrupt or his estate." Nondebtor vendees deserve special treatment, not because their contract is executory in the sense that performance remains due on both sides, but because "the purchaser in this kind of contract is likely to be the buyer

has perfected such transfer at the time of the commencement of the case, whether

or not such a purchaser exists.

of a home or farm or small business who has adjusted to a new location. Very often, especially in the case of a residential buyer, he will be poor. Certainly, modern American bankruptcy policy places as high a value on relieving the poor from the consequences of their own and others' improvidence as in doing perfect justice between creditors."

He criticized the assumption that "the purchaser whose contract is rejected after he has paid a part of the price will have only an unsecured claim" but that "he may get the land if he has paid the entire price on the ground that the contract is no longer 'executory.' . . . . The suggested distinction between paid-in-part and paid-in-full seems utterly capricious. Instead, one should not speculate about the meaning of 'executory' but rather should consider what ought to be thrown into the pot for general creditors and when it is fair to recognize special claims to certain assets." [5]

Others echoed Lacy. One, emphasizing the "economic consequences" of rejection, argued that the nondebtor vendee should not be "used as a resource by the trustee to increase the bankrupt's estate and the cost of bankruptcy [should] be borne by commercial creditors. This would increase the creditors' incentive to deal only with sound vendors and would entirely remove this 'policing' function from the vendees, who occupy the poorest position to exercise such control. Moreover, the commercial creditors are capable of distributing the risks of a vendor's bankruptcy, but the vendees are not. The creditors can simply pass on the increased costs of vendor bankruptcy by raising the cost of credit. Most likely, the vendees would ultimately pay for most of this increase in the cost of credit. But they would be paying as a group, and therefore the risks of bankruptcy would be distributed ev-enly and rationally—rather than falling completely on a small and arbitrary group of vendees."

Thus, Sections 365(i) and 365(j) . . . are a tonic for the consequence of its application. This suggests that, in the final analysis, executory contracts are measured not by a mutuality of commitments but by the nature of the parties and the goals of reorganization.

4. The down payment in *New York Investors* was secured with a lien on the property. The lien had been recorded and was not avoidable by the trustee. Countryman, however, notes that, "[u]nless he is well counseled and protected by draftsmanship in advance," the buyer "may . . . be left with only a provable general claim for damages." What is more, where the debtor is vendor, he is also debtor in possession, armed with the strong-arm powers of a trustee. Absent special protection, even when recorded, and where possession is not equivalent to recording, the interest of a buyer might be avoided.

5. Similarly, he argued that the vendee not in possession is entitled to at least a lien for the amount paid on the interest of the bankrupt vendor: "There is no question that the purchaser enjoys such a lien in nonbankruptcy situations where the contract aborts without fault on his part. The lien is not an incident of the contract but is a judicial creation called for by the equities of the situation. The purchaser has made payments on the reasonable assumption that he was the equitable owner of the land and not in reliance on the vendor's general credit. This noncontractual nature of the lien permits an argument that it is not subject to the trustee's rejection power."

*In re Booth*, 19 B.R. 53, 55-6 (Bankr. D.Utah 1982) (citations omitted).

There are two distinct line of cases regarding the interaction (or lack thereof) of § 544 and § 365. One line of cases holds that both sections are not mutually exclusive, but instead work hand in hand to determine the rights of the debtor/trustee and the purchaser under executory contracts for the sale of real property. The other line of cases holds that § 365's spe-

cific provisions override the general rights under § 544 and delineate the sole and exclusive rights and remedies of the parties.

In *Webber Lumber & Supply Co. v. Trucklease Corp. (In re Webber Lumber & Supply Co.)*, 134 B.R. 76, 79–80 (Bankr. D.Mass.), the court states that

> [t]here is no conflict among the statutes. Section 365(h) and (i) prohibit the *rejection* of the property interest of a lessee or purchaser in possession. These subsections are based on upon the proposition that rejection, which merely involves a debtor declining to assume a contractual obligation, should not be used to terminate property interests. Section 544(a), on the other hand, has as its express purpose the *avoidance* of property interests. The statutes supplement each other rather than conflict. All that was necessary to escape § 544(a) was a recording of the lease or a notice of the lease. The Debtor's agreement not to do so was fatal.

Similarly, in *Seidle v. Aeroservice Int'l Inc. (In re Belize Airways Ltd.)*, 12 B.R. 387, 390 (Bankr.S.D.Fla.1981) the court held that

> it appears to the Court that both Sec. 365 and Sec. 544 have a scope of effect on leases—Sec. 544(a)(3) permits a trustee to avoid a transfer of real property, while Sec. 365 permits a trustee to reject a lease of real property which is not voidable by a trustee (or which the trustee elects not to void). The avoidance of a lease completely terminates the lease, while a rejection of a lease of real property results merely in cancellation of the covenants requiring the debtor's performance in the future but does not automatically terminate the lease so as to divest the lessee of his estate in the property.

*See generally University Towers Owners' Corp. v. UTB Associates (In re University Towers Owners' Corp.)*, 266 B.R. 36 (Bankr.D.Conn.2001) (allowing avoidance of leasehold interest under § 544(a)(3) without discussion of § 365); *In re Bedford Square Assoc., L.P.*, 247 B.R. 140 (Bankr.E.D.Pa.2000) (debtor would "in all probability" succeed on a § 544(a)(3) avoidance action with respect to improperly recorded lease creating a "bona fide dispute" and allowing debtor in possession to sell subject leasehold pursuant to § 363 over tenant's § 365(h)(1)(ii) rights); Norton Bankruptcy Law and Practice 2d § 39:35 (2001) ("the trustee or debtor in possession may employ the avoidance powers when appropriate as Code § 365 does not control over the avoiding powers") *(citing Webber Lumber & Supply Co., Inc. v. Trucklease Corp. (In re Webber Lumber & Supply Co., Inc.)*, 134 B.R. 76 (Bankr. D.Mass.1991); *Seidle v. Aeroservice Int'l Inc. (In re Belize Airways Ltd.)*, 12 B.R. 387 (Bankr.S.D.Fla.1981); *In re Bedford Sq. Assocs., L.P.*, 247 B.R. 140 (Bankr. E.D.Pa.2000))*.

On the other hand, the Third Circuit, albeit in dicta, stated that "it is highly unlikely Congress would enact Section 365(i) while at the same time allowing the trustee to avoid, under Section 544(a)(3), the equitable interests of buyers in possession." *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982).

Relying on *McCannon*, a Louisiana Bankruptcy Court held that § 544 "is a broad provision applicable to transfers and obligations in general and is superseded with respect to [land purchase agreements] by § 365(i). Although § 544(a)(3) allows the avoidance of 'obligations' as well as the avoidance of transfers, the term 'obligation' is not defined in the Bankruptcy Code." Thus, the court held that a purchase agreement, as an executory con-

tract, is governed by the directly applicable provisions of § 365(i) rather than the general concepts of § 544(a)(3). *Smith v. Ball (In re Smith)*, 71 B.R. 754 (Bankr. M.D.La.1987) (citing *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982)). *See generally In re Taylor*, 198 B.R. 142, 164–67 (Bankr.D.S.C.1996) (holding that § 365 is debtor's exclusive remedy when faced with unexpired lease contracts in lieu of § 363 relief without discussion of § 544); *In re Churchill Properties*, 197 B.R. 283, 286–88 (Bankr.N.D.Ill.1996) (specific provisions of § 365(h) override general provisions of § 363(f)).

■ The undersigned finds the *Webber Lumber* case, and the cases holding similarly, to be persuasive for the reasons stated therein. While § 544 is a general provision and § 365 is specific, statutes should generally be construed so that effect is given to all its provisions and no one part will be inoperative or superfluous. *In re Luongo*, 259 F.3d 323, 339 (5th Cir.2001). To adopt Urban One's contention that § 365 always trumps § 544 would be to render a portion of § 544 that would otherwise apply in this case "inoperative or superfluous."

Furthermore, if Congress had intended any provision of § 365 to trump the trustee's § 544 powers, Congress could have so provided in the Code. It is clear that Congress knows how to limit the trustee's strong arm powers. *See* 11 U.S.C. § 546.

It should be noted that the evidentiary threshold the trustee must cross will, in many circumstances, bar the trustee from avoiding an executory contract. For example, in Texas, the "typical" purchaser in possession will, in all likelihood, put the trustee on inquiry notice so as to defeat the trustee's standing as a bona fide purchaser ("BFP"). However, there are factual scenarios where the trustee's BFP status would not be defeated.

The foregoing holding appears to be in line with the purpose underlying § 365(i), as set out in *Booth*. It will protect the innocent vendee in possession under the contract for deed, however it will also allow courts to "consider what ought to be thrown into the pot for general creditors and when it is fair to recognize special claims to certain assets." 19 B.R. at 56. Even the *Booth* court recognized that unrecorded liens are subject to the trustees strong arm powers. *Booth*, 19 B.R. at 55 n. 4.

Vendees, whether in possession or not, are not left wholly unprotected by this holding. They are not only protected by the § 544 requirement that the trustee be a bona fide purchaser, but they are free to protect themselves by recording their contract for deed.[5] *See Webber Lumber & Supply Co. v. Trucklease Corp. (In re Webber Lumber & Supply Co.)*, 134 B.R. 76, 80 (Bankr.D.Mass.).

Urban One relies heavily on *In El Paso Refinery*, 220 B.R. 37 (Bankr.W.D.Tex. 1998), wherein the court stated that § 365 "operates primarily to facilitate the debtor's rehabilitation while still affording the non-debtor party the ability to protect its interests, essentially providing the *exclusive mechanism for resolving executory contract issues.*" 220 B.R. at 44. (emphasis added). The court later added that "by *limiting the non-debtor party* to the § 365 remedies, the value of the executory contract can be preserved for the estate, while allowing the estate an appropriate period

---

5. Although such recording is not mandatory under Texas law, *see In re Fulton*, 148 B.R. 838, 842 (Bankr.S.D.Tex.1992), it appears that the "well counseled" vendee (*In re Booth*, 19 B.R. at 55 n. 4) will record his contract for deed, in part, to avoid any future § 544 claims. The vendee's failure to do so is at his own peril.

of time to evaluate its options." *Id.* For the reasons previously stated, the Trustee's assertion of a § 544(a)(3) cause of action is not precluded therefrom by reason of § 365(i) or (j). Accordingly, Urban One Partners' Motion for Summary Judgment is denied.

### Applicability of § 544 to Contracts for Deed

■ Urban One Partners argue that there is no "transfer" to which § 544 can apply because a contract for deed is not effective as a conveyance of land. However, Urban One Partners overlook that § 544 not only allows the trustee to avoid certain transfers, but also generally grants Trustee his "strong-arm powers," i.e. his BFP status.[6] A transfer to Urban One Partners therefore, is not necessary, as of the commencement of the case.

### Bona Fide Purchasers v. Contracts for Deed

■ The parties vigorously contest whether a BFP will trump a contract for deed. The seminal case in Texas on the issue is *Federal Life Ins. Co. v. Martin,* 157 S.W.2d 149 (Tex.Civ.App.-Texarkana 1941, writ ref'd). In *Martin,* the court held, *inter alia,* that a bona fide purchaser trumps a contract for deed. Urban One Partners cite a string of cases, i.e. *In re Fulton, supra, Jensen v. Bryson,* 614 S.W.2d 930 (Tex.Civ.App.-Amarillo 1981), for the proposition that the contract for deed is not trumped by a bona fide purchaser.

Those cases hold that (or otherwise relate to) judgment lien creditors' interests as being subordinate to unrecorded contracts for deed. However, judgment lien creditors and BFPs enjoy vastly different rights under Texas law. A judgment lien creditor is not entitled to the same protection as a BFP. *See Texas American Bank/Levelland v. Resendez,* 706 S.W.2d 343, 345–46 (Tex.App.-Amarillo 1986); *Gaona v. Gonzales,* 997 S.W.2d 784, 786 (Tex.App.-Austin 1999); *Jensen v. Bryson,* 614 S.W.2d at 934..

Section 13.001(a) of the Texas Property Code states that a "conveyance of real property or an interest in real property ... is void as to a ... subsequent purchaser for a valuable consideration without notice unless the instrument has been ... filed for record as required by law." Tex. Prop.Code Ann. § 13.001(a) (Vernon Supp. 2002). The Urban One Partners argue that because § 13.001 does not apply to equitable interests such as theirs, *i.e.,* that BFPs, under the statute, cannot trump contracts for deed. Urban One Partners also argue that *Martin* was superceded by passage of the Texas recording statutes, contained in the Texas Property Code §§ 13.001 *et seq.* Thus, Urban One Partners argue that § 13.001 is the sole basis on which any subsequent transferee may void an unrecorded interest.

Texas cases do hold that the equitable interests of judgment lien creditors can be trumped by unrecorded interests in land despite § 13.001 because equitable interests in land are not required to be recorded. See *Park Cent. Bank v. JHJ Invs. Co.,* 835 S.W.2d 813 (Tex.App.-Fort Worth 1992); *Texas American Bank/Levelland v. Resendez,* 706 S.W.2d 343, 345–46 (Tex. App.-Amarillo 1986). Texas courts, when pitted with an equitable claim (of the vendee) versus a legal lien (of the judgment

---

**6.** Section 544(a) expressly reads "[t]he trustee shall have, as of the commencement of the case ... the rights and powers of ... (3) a bona fide purchaser of real property." 11 U.S.C. § 544(a)(3). Further, the Trustee can avoid not only "any transfer," but also "any obligation incurred by the debtor that is voidable by—... (3) a bona fide purchaser of real property."

lien creditor), have chosen the equitable claim that is first in time, rather than the recorded claim. However, the "equities" are different when pitting an equitable claim against an "innocent purchaser."

Texas courts hold that BFPs will "prevail over the holder of a prior equitable title." *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 766 (Tex.App.-Fort Worth 1994). Thus, Texas courts clearly treat judgment lien creditors and BFPs differently, as discussed above, whether under § 13.001 or not. Since it appears that the holding in *Martin* is alive and well and not superceded by the recording statutes, if the Trustee is a BFP, his status will trump Urban One Partners' contract for deed.

### Is Trustee a Bona Fide Purchaser?

■ The issue of whether the trustee is a BFP is governed by state law. *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 298 (5th Cir.1997). "Under Texas law, a 'bona fide purchaser is one who acquires (apparent) legal title to property in good faith and for a valuable consideration without ... notice of an infirmity in the title.'" *Id.*

■ The actual knowledge of the trustee is irrelevant to the analysis. 11 U.S.C. § 544(a). Thus, it is only if the trustee is charged with constructive or implied notice would his status as a BFP be defeated. It appears that the parties do not dispute that the trustee lacked constructive notice by recording, given that the contract for deed was never recorded. *See* Tex. Prop. Code Ann. § 13.002 (Vernon 1981).

■ Trustee argues that Debtor's, and Debtor's spouse's, very public connection with Coldwell Banker makes Coldwell Banker's possession of the Harwood Property equivocal, so as to defeat any implied notice argument. Implied notice of adverse ownership is triggered if the Court

determines that a BFP would be under inquiry notice. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001). Inquiry notice, in turn, is triggered if possession of the property by a party other than the record owner (who may later make claim to ownership) is visible, open, exclusive, and unequivocal. *Id.* Constructive possession is not sufficient. *Teofan v. Cools (In re Spring Creek Invs.)*, 71 B.R. 157, 159 (Bankr.N.D.Tex.1987) (citing *Ball v. Norton*, 238 S.W. 889 (Tex.Com.App.1922)). The BFP is charged with notice of all the possessor's claims the purchaser might have reasonably discovered on proper inquiry. *Madison*, 39 S.W.3d at 606.

■ The duty of inquiry is governed by standards of reasonableness. *Hamilton*, 125 F.3d at 300. "However, the duty does not extend to exhaustive inquiry or investigation of speculation and conjecture." *Spring Creek Invs.*, 71 B.R. at 160.

Possession that may easily be referred to the record title holder is insufficient. *Id.* at 159.

Actual possession, as distinguished from constructive possession, contemplates occupancy. It is notice because it is a fact which the purchaser must know and it puts him on inquiry concerning the claim of the possessor. What would make inquiry a duty in this case is such a visible state of things as is inconsistent with a perfect right of the Debtor to transfer good title at the commencement of the case. Inquiry would *not* be mandated by ambiguous or equivocal possession which may appear subservient or attributable to he holder of legal title because it is not sufficiently indicative of adverse ownership. The legal presumption that constructive possession is consistent with record title continues until it

is shown that actual knowledge to the contrary was conveyed to the purchaser. *Id.* at 160.

In *Madison v. Gordon,* 39 S.W.3d 604 (Tex.2001), the court held that a tenant's possession of a portion of a multi-unit rental property was neither exclusive nor unequivocal. The court noted that "[a]s rental property, one would expect occupants on the property."

 It is unclear from the record what the nature of the Harwood Property is, i.e. whether it is obviously commercial rental property, residential rental property, or strictly residential property being used for business. Also, there is a fact question as to whether *Urban One Partners* were in actual or constructive possession of the property. The record is clear that Coldwell Banker inhabited the property, however the record is unclear as to whether there is any indicia of open, visible, exclusive and unequivocal possession by Urban One Partners. As such, there remains fact questions as to whether the Trustee's BFP status is defeated by implied notice. Therefore, Trustee's Motion for Partial Summary Judgment is denied.

### Conclusion

Urban One Partners' Motion for Summary Judgment is denied on the grounds that the Trustee's assertion of a § 544(a)(3) cause of action is not precluded by reason of § 365(i) & (j). Trustee's Motion for Partial Summary Judgment is denied on the grounds that a fact issue remains as to whether he is a bona fide purchaser under Texas law.