In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2753

PRECISION INDUSTRIES, INC., and
CIRCO LEASING CO., LLC,

*Appellees*,

*v.*

QUALITECH STEEL SBQ, LLC,

*Appellant.*

IN RE:

QUALITECH STEEL CORPORATION and
QUALITECH STEEL HOLDINGS CORPORATION,

*Debtors-in-Possession.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 247—**David F. Hamilton**, *Judge.*

ARGUED FEBRUARY 15, 2002—DECIDED APRIL 23, 2003

Before ROVNER, DIANE P. WOOD, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* In this case of first impression at the circuit level, we are asked to reconcile two distinct provisions of the Bankruptcy Code: 11 U.S.C. § 363(f), which authorizes the sale of a debtor's property free of

any "interest" other than the estate's, and 11 U.S.C. § 365(h), which protects the rights of the lessee when the debtor rejects a lease of estate property. The bankruptcy court in this case construed a sale order issued pursuant to section 363(f) to extinguish the possessory rights bestowed by a lease of the estate's land. The district court disagreed, reasoning that sections 363(f) and 365(h) conflict and that the more specific terms of the latter provision concerning leaseholds trump those of the former, in this way preserving the lessee's possessory interest even after a section 363(f) sale. *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 2001 WL 699881 (S.D. Ind. April 24, 2001). We reverse, concluding that under the plain terms of section 363(f), the sale order extinguished the lessee's possessory interest.

## I.

The debtors in the underlying bankruptcy proceedings—Qualitech Steel Corporation and Qualitech Steel Holdings Corporation (collectively, "Qualitech")—owned and operated a steel mill on a 138-acre tract of land in Pittsboro, Indiana. Before it entered bankruptcy, Qualitech had entered into two related agreements with appellees Precision Industries, Inc. and Circo Leasing Co., LLC (collectively, "Precision"). A detailed supply agreement executed on June 29, 1998, provided that Precision would construct a supply warehouse at Qualitech's Pittsboro facility and operate it for a period of ten years so as to provide on-site, integrated supply services for Qualitech. The second agreement, a land lease executed on February 25, 1999, specified that Qualitech would lease to Precision the property underlying the warehouse for a period of ten years. In exchange for nominal rent of $1 per year, the lease granted Precision exclusive possession of the warehouse and any other improvements or fixtures it installed on

the land for the term of the lease; and in the event of an early termination or default under either the lease or the supply agreement, Precision had the right to remove all improvements and fixtures from the property. Assuming no default, Qualitech had the right at the end of the lease term to purchase the warehouse, its fixtures, and other improvements for $1. In accordance with the two agreements, Precision built and stocked a warehouse on the leased property and Qualitech began purchasing goods from Precision. The lease was never recorded.

Heavily in debt,[1] Qualitech filed a Chapter 11 bankruptcy petition on March 22, 1999. On June 30, 1999, substantially all of Qualitech's assets were sold at auction for a credit bid of $180 million to a group of senior pre-petition lenders that held the primary mortgage on the Pittsboro property.[2] On August 13, 1999, at the conclusion of a noticed hearing, the bankruptcy court entered an order approving the sale (hereinafter, the "Sale Order"). Precision, which had notice of the hearing, did not object to the Sale Order. That order directed Qualitech to convey its assets to the pre-petition lenders—referred to in the Sale Order collectively as the "purchaser"—"free and clear of all liens, claims, encumbrances, and *interests*," except for specifically enumerated liens, pursuant to section 363(f), among other provisions of the Code. R. 492 at 6-7 ¶ 2 (emphasis supplied). All persons and entities holding interests other than those expressly preserved in the Sale Order were barred from asserting those interests against

---

[1]  By the time Qualitech's assets were sold at auction, there were more than $380 million in secured claims against Qualitech's estate.

[2]  The original amount of the mortgage held by these pre-petition lenders was $170 million. By the time the sale occurred, the outstanding balance on that mortgage was more than $263 million.

the purchaser. *Id.* at 8 ¶ 6. The pre-petition senior lenders subsequently transferred their interest in the purchased assets to newly-formed Qualitech Steel SBQ, LLC ("New Qualitech"), which assumed the rights of the purchaser under the Sale Order and took title to the Pittsboro property. The Sale Order also reserved for the purchaser the debtor's right to assume and assign executory contracts pursuant to 11 U.S.C. § 365. R.492 at 9 ¶ 9. Although the sale closed on or about August 26, 1999 without assumption of either the lease or the supply agreement with Precision, negotiations toward that end continued and the parties extended the deadline for assumption on four occasions. Those negotiations did not prove successful, however, with the result that Precision's lease and supply agreement were *de facto* rejected. *See* 2001 WL 699881, at *9 & n.8.

By December 3, 1999, Precision had completely vacated and padlocked the warehouse. Shortly thereafter, New Qualitech, without Precision's knowledge or consent, hired a locksmith and changed the locks on the building. New Qualitech's takeover of the warehouse led to a dispute over whether Precision's possessory interest in the leased property, pursuant to section 365(h), survived the bankruptcy sale. Finding itself locked out of the warehouse, Precision filed a diversity suit in the district court contending that New Qualitech was guilty of trespass, conversion, wrongful eviction, breach of an implied contract, and estoppel. New Qualitech in turn asked the district court to refer Precision's complaint—which was premised on the notion that Precision retained a possessory interest in the warehouse under the lease—to the bankruptcy court, and New Qualitech also filed a request with the bankruptcy court asking it to clarify that the Sale Order had extinguished Precision's possessory interest. The district court obliged New Qualitech by referring Precision's complaint to the bankruptcy court, and that court in turn resolved

the matter of Precision's possessory interest in New Quali-
tech's favor.

Based on the terms of both section 363(f) and the Sale
Order itself, the bankruptcy court determined that New
Qualitech had obtained title to Qualitech's property free
and clear of any possessory rights that Precision otherwise
might have enjoyed under its lease. In relevant part, the
court held that Precision's possessory interest was among
those interests extinguished by the Sale Order:

> The interest[ ] of Precision as a lessee under the Lease
> is an "interest" within the meaning of the Sale Order.
> The sale of the Indiana Facilities pursuant to 11 U.S.C.
> § 363(b), (f), and (k) was free and clear of all liens,
> claims, encumbrances and interests [and therefore]
> acted to convey the Indiana Facilities free and clear
> of the interests of Precision as lessee under an unre-
> corded lease.

R. 601 at 5 ¶ 6. The court emphasized that "[t]he Sale Or-
der was unequivocal and not left open to interpretation." *Id.*
at 7 ¶ 11. Implicitly, the bankruptcy court rejected the
notion that the provisions of section 365(h) acted to pre-
serve Precision's rights as a lessee in the face of the Sale
Order.

> [T]he Court is forced to conclude that under the
> circumstances and the plain language of the Sale Order
> [New Qualitech] holds the assets acquired from
> [Qualitech] free and clear of the Lease and all interest
> of Precision in the . . . real estate acquired by the
> Purchaser from the Debtor. The Lease has been extin-
> guished by the Sale Order and the Sale Order is no
> longer subject to attack by Precision.
>
> Precision is barred from asserting any interest in
> the real estate acquired by the Purchaser from
> [Qualitech]. . . . Precision may take no further action to

enforce the Lease against [New Qualitech] or the Indiana Facilities.

*Id.* at 9-10 ¶¶ 16, 17.

Precision appealed the bankruptcy court's decision, and the district court reversed. The court determined at the outset that the provisions of sections 363(f) and 365(h) were in apparent conflict: "Section 365(h) appears to grant the tenant the right to retain the benefits of the lease, while Section 363(f) appears to allow the [debtor] to divest the tenant of its leasehold." 2001 WL 699881, at *11. Accordingly, the court looked beyond the text of the two statutes. After surveying the legislative history of both provisions along with the divided case law on the subject, the court concluded that the terms of section 365(h) prevail over those of section 363(f) as applied to the rights of lessees.

> The focus of Section 365(h)(1)(A)(ii) is very specific—it defines a lessee's post-rejection rights. The statute expressly states that, after rejection of an unexpired lease, a non-debtor lessee may elect to retain possession of the property for *the balance of the term* and for any enforceable extensions of the term. The available legislative history . . . also indicates that Congress intended to preserve the lessee's estate in the event of rejection by a bankrupt landlord. Finally, the statute does not expressly cross-reference any other provision of the Bankruptcy Code by way of limitation. For these reasons, this court holds that the more specific Section 365(h) overrides Section 363(f) in this case. . . . There is no statutory basis for allowing the debtor-lessor to terminate the lessee's possession by selling the property out from under the lessee, and thus limiting a lessee's post-rejection rights solely to cases where the debtor-lessor remains in possession of its property.

2001 WL 699881, at *14 (emphasis in original). Finally, the district court rejected the notion that Precision's appeal was untimely because it had never objected to or appealed from the Sale Order itself. For several reasons, the district court found the Sale Order to be ambiguous: (1) The Order stated that the sale of Qualitech's assets was "pursuant to" section 365 as well as 363, and given the difficulty reconciling those two statutory provisions, it perpetuated the uncertainty as to which of them controlled vis à vis Precision's rights under the lease; (2) the Order did not plainly extinguish Precision's possessory interest; and (3) to the contrary, by preserving for New Qualitech the debtor's right to assume or reject executory contracts, the Order suggested that Precision's rights under the lease were not extinguished by the sale. 2001 WL 699881, at *19-21.

New Qualitech filed a timely notice of appeal from the district court's decision. We have jurisdiction pursuant to 28 U.S.C. § 158(d). *See, e.g.*, *In re Golant*, 239 F.3d 931, 934 (7th Cir. 2001).

## II.

Our task in this appeal is straightforward. We must decide whether a sale order issued under section 363(f), which purports to authorize the transfer of a debtor's property "free and clear of all liens, claims, encumbrances, and interests," operates to extinguish a lessee's possessory interest in the property, or whether the terms of section 365(h) operate to preserve that interest. This is, of course, a question of law, making our review of the district court's decision de novo. *See, e.g.*, *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002).

Before turning to the merits, however, we must consider whether, as New Qualitech asserts (and as the bankruptcy court agreed), res judicata bars Precision from challeng-

ing the Sale Order. As we have noted, Precision never voiced any objection to the bankruptcy court about the proposed sale, nor did it take an appeal from the Sale Order itself. Not until months later, when New Qualitech changed the locks on the warehouse, did Precision take issue with the Sale Order, which it did by filing a diversity action in the district court. Sale orders are final, appealable orders, *e.g.*, *In re Kids Creek Partners, L.P.*, 200 F.3d 1070, 1074-75 (7th Cir. 2000), and our opinion in *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988), *cert. denied*, 490 U.S. 1006, 109 S. Ct. 1642 (1989), states that once the time for appeal from a bankruptcy court's sale order has expired, res judicata precludes a party to the sale proceeding from attacking the sale order by way of a new lawsuit. *See also FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 286 (7th Cir. 2002), *cert. denied*, 2003 WL 1220239 (U.S. Apr. 7, 2003). That is, in effect, what Precision attempted to do here through its diversity suit. But with the referral of Precision's complaint to the bankruptcy court, and with New Qualitech's own request that the bankruptcy court clarify and enforce its Sale Order, the entire issue was put before the very judge who issued the Sale Order and in the same bankruptcy proceeding. This turn of events renders res judicata inapposite. *See generally Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001). Res judicata is not, in any case, a doctrine that affects our jurisdiction to determine whether the bankruptcy court was authorized to permit the sale of Qualitech's land free and clear of Precision's possessory interest as a lessee. *See White v. Elrod*, 816 F.2d 1172, 1175 (7th Cir.), *cert. denied*, 484 U.S. 924, 108 S. Ct. 286 (1987). Moreover, although the bankruptcy judge found that Precision had waited too long to challenge the Sale Order, he did take the opportunity to confirm that the Sale Order had, indeed, extinguished Precision's possessory interest. R.601 at 5 ¶ 6; *id.* at 7 ¶ 11; *id.* at 9 ¶ 16. As the district judge recognized, that construction of the Sale Order rests on an

understanding, albeit unstated, that section 363(f) permits the extinguishment of a lease notwithstanding the terms of section 365(h). 2001 WL 699881, at *20. The district judge found that understanding to be mistaken; as we have noted, he concluded that the provisions of section 365(h) trump those of section 363(f) where leases are concerned. In short, what the Sale Order accomplished vis à vis Precision's lease is a question that turns, in large measure, on what the Bankruptcy Code permitted. The statutory question is therefore squarely presented to us, and we proceed to address it.

As in all statutory interpretation cases, we begin with the statutory language. *E.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760 (1999). Statutory terms or words will be construed according to their ordinary, common meaning unless they are specifically defined by the statute or the statutory context requires a different definition. *E.g.*, *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 207, 117 S. Ct. 660, 664 (1997). The Supreme Court has repeatedly instructed "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. [Citations omitted.] When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 701 (1981)).

We must also have in mind our obligation to construe the two statutory provisions at issue in this case in such a way as to avoid conflicts between them, if such a construction is possible and reasonable. As the Supreme Court has observed:

> [W]e "are not at liberty to pick and choose among congressional enactments, and when two statutes are

capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). We should read federal statutes "to give effect to each if we can do so while preserving their sense and purpose." *Watt v. Alaska*, 451 U.S. 259, 267, 101 S. Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); see also *United States v. Fausto*, 484 U.S. 439, 453, 108 S. Ct. 668, 676-77, 98 L.Ed.2d 830 (1988).

*Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n*, 491 U.S. 490, 510, 109 S. Ct. 2584, 2596 (1989); *see also Securities Indus. Ass'n v. Board of Governors of Federal Reserve Sys.*, 468 U.S. 137, 176, 104 S. Ct. 2979, 3000 (1984) (O'Connor, J., dissenting) (construing one portion of federal law to implicitly repeal or override another "is a last resort, . . . and must be avoided where an interpretation of the statutory language is available that is consistent with legislative intent and that shows the conflict to be merely apparent and not real"). With these principles in mind, we turn to the language of the statutory provisions at issue here.

Section 363 generally provides for the use, sale, or lease of property belonging to the bankruptcy estate. As relevant here, subsections (b) and (c) permit the trustee of a bankruptcy estate to sell estate property either within the normal course of a debtor's business (in which case the sale may take place without prior notice and a hearing) or outside the normal course of business (in which case, as here, notice and hearing are mandatory). Subsection (f) makes clear that the property, under specified conditions, may be sold unencumbered of interests held by others:

The trustee may sell property under subsection (b) or (c) of this section free and clear of *any interest* in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

(Emphasis ours.) Finally, subsection (e) provides that "on request of an entity that has an interest in property . . . proposed to be . . . sold . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest." We note that although section 363(f) refers to the powers and obligations of the "trustee," these are powers and obligations which, in a Chapter 11 case, inure to the debtor-in-possession. *See* 11 U.S.C. § 1107(a).

The Bankruptcy Code does not define "any interest," and in the course of applying section 363(f) to a wide variety of rights and obligations related to estate property, courts have been unable to formulate a precise definition. *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258 (3d Cir. 2000). But the Code itself does not suggest that "interest" should be understood in a special or narrow sense; on the contrary, the use of the term "any" counsels in favor of a broad interpretation. *See United States v. Gonzalez*, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997). As commentators have pointed out, the Supreme Court elsewhere has observed that the term "interest" is a broad term no doubt selected by Congress to avoid "rigid and technical definitions drawn from other areas of the law . . . ." *Russello v. United States*, 464 U.S.

16, 21, 104 S. Ct. 296, 299 (1983); *see* Steven R. Haydon & Nancy J. March, *Sale of Estate Property Free and Clear of Real Property Leasehold Interests Pursuant to §363(f): An Unwritten Limitation?*, 19 AMERICAN BANKR. INST. J. 20, 20 (2000) (hereinafter, *"Unwritten Limitation?"*). The *Russello* Court thus concluded that "interest," as used in the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1963(a)(1), "comprehends all forms of real and personal property, including profits and proceeds." 464 U.S. at 21, 104 S. Ct. at 299. *See also United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (broadly construing "legal interest" as used in criminal forfeiture statute, 21 U.S.C. § 853(n)(2), to include "all legally protected rights, claims, titles, or shares in real or personal property").

Here, we likewise conclude that the term "any interest" as used in section 363(f) is sufficiently broad to include Precision's possessory interest as a lessee. BLACK'S defines "interest" to mean "[a] legal share in something; all or part of a legal or equitable claim to or right in property." BLACK'S LAW DICTIONARY, 816 (7th ed. 1999). The right that a leasehold confers upon the lessee is one to possess property for the term of the lease. It is, therefore, not simply a right that is connected to or arising from the property, *see In re Trans World Airlines, Inc.*, 322 F.3d 283, 289-90 (3d Cir. 2003), but a (limited) right to the property itself. That right readily may be understood as an "interest" in the property. *FutureSource LLC v. Reuters Ltd.*, *supra*, 312 F.3d at 285; s*ee also In re Downtown Athletic Club of New York City, Inc.*, 44 Collier Bankr. Cas. 2d 342, 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000) ("under the expansive interpretation of 'any interest' under § 363(f)(4), Defendants' asserted possessory rights as lessees fall within the scope of this section"); *In re Taylor*, 198 B.R. 142, 162 (Bankr. D. S.C. 1996) ("it appears that a leasehold is a type of 'interest' that fits within the plain text of the . . . stat-

ute"); *see also C.H.E.G., Inc. v. Millenium Bank*, 121 Cal. Rptr. 2d 443, 448 (Cal. Ct. App. 2002) (holding that contractual right to commission in event of sale of property leased from debtor is an "interest" in estate property that may be extinguished pursuant to section 363(f)). This inclusive interpretation of the phrase "any interest" is consistent with the expansive use of that same phrase in other provisions of the Code. *See*, *e.g*., 11. U.S.C. § 541(a)(3), (4), (5), and (7) (identifying various interests comprising property of the estate).

Because Precision's right to possess the property as a lessee qualifies as an interest for purposes of section 363(f), the statute on its face authorized the sale of Qualitech's property free and clear of that interest. Although the statute conditions such a sale on the satisfaction of one of five conditions, the parties before us do not dispute that at least one of those conditions was satisfied.[3] On the contrary, both parties to the appeal proceed from the premise that section 363(f) standing alone permits the sale of estate property free and clear of a lessee's possessory interest.

Where the parties lock horns is on whether the terms of section 365(h) conflict with and override those of section 363(f). Section 365 generally provides the trustee (and here, the debtor-in-possession, *see* § 1107(a)) with the

---

[3] New Qualitech asserts in its opening brief that "[p]utting aside the issue of whether §365(h) somehow trumps a §363(f) sale, it is not disputed that the Debtor was authorized to sell the property free and clear of Precision's unrecorded lease." New Qualitech Br. at 7 n.2. Precision does not take issue with this assertion in its response brief. Accordingly, we shall assume, as New Qualitech asserts, that one or more of the statutory criteria were met and that a sale of the property free and clear of Precision's possessory interest as a lessee was permissible.

right to reject executory contracts, a power that serves to relieve the debtor of contractual obligations that are unduly burdensome. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S. Ct. 1188, 1197 (1984). However, insofar as lessees of the estate's property are concerned, the power of rejection is limited so as to preclude eviction of the lessee. In relevant part, section 365(h)(1)(A)(ii) provides:

> If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and—
>
> . . .
>
> > (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease . . . that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable non-bankruptcy law.

The terms of section 365(h) thus allow a lessee to remain in possession of estate property notwithstanding the debtor-in-possession's decision to reject the lease. In this way, the statute strikes a balance between the respective rights of the debtor-lessor and its tenant: the lessee retains the right to possess the property for the remainder of the term it bargained for, while the rejection frees the debtor-lessor of other burdensome obligations that it assumed under the lease (as, for example, the duty to provide services to the lessee). *See Taylor*, 198 B.R. at 165-67 (summarizing legislative history and case law); *In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982); *Unwritten Limitation?*, 19 AM. BANKR. INST. J. at 22.

The district court, following the lead of other lower courts, concluded that the limitations imposed by section 365(h) vis à vis rejection of leases necessarily conflict with and override the debtor-in-possession's ability to sell estate

property free and clear of a lessee's possessory interest. But for the reasons that follow, we conclude that the terms of section 365(h) do not supersede those of section 363(f).

First, the statutory provisions themselves do not suggest that one supersedes or limits the other. Notably, sections 363 and 365 both contain cross-references indicating that certain of their provisions are subject to other statutory mandates. *See* §§ 363(d), 365(a). But nowhere in either section 363(f) or section 356(h) is there a similar cross-reference indicating that the broad right to sell estate property free of "any interest" is subordinate to the protections that section 365(h) accords to lessees. The omission suggests that Congress did not intend for the latter section to limit the former. *See*, *e.g.*, *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338, 114 S. Ct. 1588, 1593 (1994) ("'[I]t is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'") (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040 (1993)); *see also Unwritten Limitation?*, 19 AM. BANKR. INST. J. at 21.

Second, the plain language of section 365(h)(1)(A) suggests that it has a limited scope. By its own terms, that subsection applies "[i]f the trustee [or debtor-in-possession] *rejects* an unexpired lease of real property . . . ." (Emphasis supplied.) Here what occurred in the first instance was a sale of the property that Precision was leasing rather than a rejection of its lease. Granted, if the Sale Order operated to extinguish Precision's right to possess the property—as we conclude it did—then the effect of the sale might be understood as the equivalent of a repudiation of Precision's lease. *See Taylor*, 198 B.R. at 166 ("[t]o allow a sale free and clear of a leasehold interest pursuant to § 363 . . . would effectively provide a debtor with means of dispossessing the lessee"). But nothing in the express terms of section 365(h) suggests that it applies to any

and all events that threaten the lessee's possessory rights. Section 365(h) instead focuses on a specific type of event—the rejection of an executory contract by the trustee or debtor-in-possession—and spells out the rights of parties affected by that event. It says nothing at all about sales of estate property, which are the province of section 363. The two statutory provisions thus apply to distinct sets of circumstances. *See Downtown Athletic Club*, 2000 WL 744126, at *4; *see also In re Stein*, 281 B.R. 845, 851 (Bankr. S.D.N.Y. 2002) ("[T]he trustee is not seeking to assume or reject the lease for the [debtor's] apartment; he is attempting to sell the property of the estate under § 363(b). Thus, the effect of a theoretical rejection is immaterial."); *cf. In re Webber Lumber & Supply Co.*, 134 B.R. 76, 79-80 (Bankr. D. Mass. 1991) (§ 365(h) applies only to rejection of lease and does not limit "strong-arm" power to avoid lease pursuant to 11 U.S.C. § 544(a)); *In re Sheets*, 277 B.R. 298, 306-07 (Bankr. N.D. Tex. 2002) (§ 365's provisions regarding executory contracts for purchase of property do not trump "strong-arm" authority bestowed by § 544(a) to avoid obligations).

Third, section 363 itself provides for a mechanism to protect the rights of parties whose interests may be adversely affected by the sale of estate property. As noted above, section 363(e) directs the bankruptcy court, on the request of any entity with an interest in the property to be sold, to "prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest." Because a leasehold qualifies as an "interest" in property for purposes of section 363(f), a lessee of property being sold pursuant to subsection (f) would have the right to insist that its interest be protected. "Adequate protection" does not necessarily guarantee a lessee's continued possession of the property, but it does demand, in the alternative, that the lessee be compensated for the value of its leasehold—typically from the proceeds of the sale. *See*

*Unwritten Limitation?*, 19 AM. BANKR. INST. J. at 22 & n.5, citing, *inter alia*, *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (L. Hand, J.), and *La Jolla Mortgage Fund v. Rancho El Cajon Assocs.*, 18 B.R. 283, 286 (Bankr. S.D. Cal. 1982). Lessees like Precision are therefore not without recourse in the event of a sale free and clear of their interests. They have the right to seek protection under section 363(e), and upon request, the bankruptcy court is obligated to ensure that their interests are adequately protected.

With these points in mind, it is apparent that the two statutory provisions can be construed in a way that does not disable section 363(f) vis à vis leasehold interests. Where estate property under lease is to be sold, section 363 permits the sale to occur free and clear of a lessee's possessory interest—provided that the lessee (upon request) is granted adequate protection for its interest. Where the property is not sold, and the debtor remains in possession thereof but chooses to reject the lease, section 365(h) comes into play and the lessee retains the right to possess the property. So understood, both provisions may be given full effect without coming into conflict with one another and without disregarding the rights of lessees.

We are persuaded that it is both reasonable and correct to interpret and reconcile sections 363(f) and 365(h) in this way. It is consistent with the express terms of each provision, and it avoids the unwelcome result of reading a limitation into section 363(f) that the legislature itself did not inscribe onto the statute. Congress authorized the sale of estate property free and clear of "*any* interest," not "any interest *except* a lessee's possessory interest." The interpretation is also consistent with the process of marshaling the estate's assets for the twin purposes of maximizing creditor recovery and rehabilitating the debtor, which are central to the Bankruptcy Code. *Unwritten Limitation?*, 19 AM. BANKR. INST. J. at 22-23, citing Basil H.

Mattingly, *Sale of Property of the Estate Free and Clear of Restrictions and Covenants in Bankruptcy*, 4 AM. BANKR. INST. L. REV. 431, 451-52 (1996).

Thus, section 363(f), as we interpret that provision, permitted the bankruptcy court to allow the sale of Qualitech's Pittsboro property unencumbered by Precision's possessory interest as a lessee. Precision neither objected to the sale nor sought the protection that was available under section 363(e). Its possessory interest was extinguished by the sale.

## III.

As the sale of Qualitech's property terminated Precision's possessory interest in the property as a lessee, we REVERSE the district court's judgment to the contrary.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*