**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF SPANISH PEAKS
HOLDINGS II, LLC,

*Debtor.*

PINNACLE RESTAURANT AT BIG SKY,
LLC; MONTANA OPTICOM, LLC,
*Plaintiffs-Appellants*,

v.

CH SP ACQUISITIONS, LLC; ROSS P.
RICHARDSON, Ch. 7 Trustee,
*Defendants-Appellees.*

No. 15-35572

D.C. No.
2:14-cv-00040-
SEH

AMENDED
OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted April 6, 2017
Seattle, Washington

Filed July 13, 2017
Amended September 12, 2017

Before: Alex Kozinski and William A. Fletcher, Circuit Judges, and Frederic Block, District Judge.[*]

Opinion by Judge Block

## SUMMARY[**]

### Bankruptcy

The panel affirmed the district court's judgment affirming the bankruptcy court's decision that a bankruptcy trustee's sale of a debtor's property was free and clear of unexpired leases.

Agreeing with the Seventh Circuit, the panel held that 11 U.S.C. § 363(f), authorizing a trustee to sell a debtor's assets free and clear of third-party interests, applied, and did not conflict with § 365(h), which protects the rights of lessees, because the trustee did not "reject" the leases.

---

[*] The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark A. Lindsay (argued) and David W. Ross, Babst Calland Clements and Zomnir P.C., Pittsburgh, Pennsylvania, for Plaintiffs-Appellants.

James F. Wallack (argued) and Peter D. Bilowz, Goulston & Storrs PC, Boston, Massachusetts; Steven M. Johnson, Church Harris Johnson & Williams P.C., Great Falls, Montana; for Defendants-Appellees.

**OPINION**

BLOCK, Senior District Judge:

The primary function of the Bankruptcy Code is to set out the rules for dividing up assets that are insufficient to pay a debtor's creditors in full. One such rule, contained in 11 U.S.C. § 363(f), authorizes a trustee in bankruptcy to sell—with some exceptions and limitations—a debtor's assets free and clear of third-party interests. Another, contained in 11 U.S.C. § 365(h), empowers the trustee to "reject"—that is, in effect, to breach—an unexpired lease of the debtor's property, but allows the lessee to retain any existing rights, including possession of the property.

In this case, we are called upon to decide what happens when property that the trustee proposes to sell is subject to unexpired leases. We hold that, on the facts of this case, section 363 applies and section 365 does not. We therefore affirm the bankruptcy court's conclusion that the sale was free and clear of the leases.

I

A.  Pre-Bankruptcy Background

Spanish Peaks was a 5,700-acre resort in Big Sky, Montana, the brainchild of James J. Dolan, Jr., and Timothy L. Blixseth.  The project was financed by a $130 million loan, which was secured by a mortgage and assignment of rents, from Citigroup Global Markets Realty Corp. ("Citigroup"). Citigroup later assigned the note and mortgage to Spanish Peaks Acquisition Partners, LLC ("SPAP").

A collection of interrelated entities owned the resort and managed its amenities, including a ski club, a golf course, and residential and commercial real-estate sales and rentals.  At issue here are two leases of commercial property at the resort.

In 2006, Spanish Peaks Holdings, LLC ("SPH"), leased restaurant space to Spanish Peaks Development, LLC ("SPD"), for $1,000 per month.  Dolan was an officer of both companies, and signed the lease for both lessor and lessee.  A year later, SPH and SPD replaced the 2006 lease with a lease under which SPD received a 99-year leasehold in the restaurant property in exchange for $1,000 per year in rent. In 2008, SPD assigned its interest to The Pinnacle Restaurant at Big Sky, LLC ("Pinnacle"), a company specially created for that purpose.

In 2009, SPH leased a separate parcel of commercial real estate at the resort to Montana Opticom, LLC ("Opticom"), of which Dolan was the sole member.  The lease had a term of sixty years and an annual rent of $1,285.

## B. Bankruptcy Proceedings

Facing a shrinking real-estate market and mounting operational losses, SPH began to default on its loan payments. On October 14, 2011, SPH and two related entities—The Club at Spanish Peaks, LLC, which managed the resort's ski and golf facilities, and Spanish Peaks Lodge, LLC, which managed its real-estate sales—petitioned for bankruptcy protection under Chapter 7 of the Code.[1] The petitions were filed in Delaware, but the proceedings were transferred to the Bankruptcy Court for the District of Montana, where they were consolidated for joint administration.

SPH's largest creditor was, by far, SPAP, which had a valid claim of more than $122 million secured by the mortgage on the property. SPAP subsequently assigned its interest to CH SP Acquisitions, LLC ("CH SP").

The trustee and SPAP agreed to a plan for liquidating "substantially" all of the debtors' real and personal property. Their stipulation contemplated an auction with a minimum bid of $20 million. It further stated that the sale would be "free and clear of all liens."

---

[1] By the time of the bankruptcy, the resort was operated by Spanish Peaks Holdings II, LLC, a successor to SPH. We refer to both the original and successor entities as "SPH."

The trustee then moved the bankruptcy court for an order authorizing and approving the sale.[2]  The trustee represented that the proposed sale would be "free and clear of any and all liens, claims, encumbrances and interests," except for certain specified encumbrances, and that other specified liens would be paid out of the proceeds of the sale or otherwise protected.

The Pinnacle and Opticom leases were not mentioned in either the list of encumbrances that would survive the sale or the list of liens for which protection would be provided. Noting the omission, both companies objected to "any effort to sell the Debtors['] assets free and clear of [their] leasehold interests."  They argued that the Code gave them the right to retain possession of the property notwithstanding the sale.

After a hearing, the bankruptcy court authorized the sale. It did not rule on Pinnacle's and Opticom's objection. Instead, further discussion of the claimed right to possession was deferred to the hearing on the motion to approve the sale.

Both the auction and the approval hearing took place on June 3, 2013.  CH SP won the auction with a bid of $26.1 million.  At the approval hearing, Pinnacle and Opticom renewed their claim that they were entitled to retain possession pursuant to their leases, and argued that language in the proposed approval order providing that the sale would be free and clear of those interests was inconsistent with their claimed right.  In response, CH SP's principal testified that its

---

[2] Bankruptcy procedure is nothing if not Byzantine.  The trustee's motion sought two distinct orders: first, an order *authorizing* the trustee to conduct the sale in accordance with specified procedures, and second, an order *approving* the sale—that is, confirming that the sale conformed to those procedures.

bid was contingent on the property being free and clear of the leases, while the trustee testified that he did not "t[ake] a position" on that issue.

On June 13, 2013, the bankruptcy court entered an order approving the sale. Paragraph I of the order held that the sale was free and clear of any "Interests," a term defined to include any leases "(except any right a lessee may have under 11 U.S.C. § 365(h), with respect to a valid and enforceable lease, all as determined through a motion brought before the Court by proper procedure)."

Both sides moved for clarification of the approval order. Pinnacle and Opticom sought clarification that the order preserved their rights under the leases, while CH SP sought clarification that the order approved a sale free and clear of those interests. The bankruptcy court denied having ruled one way or the other, explaining that it would not consider the issue until the parties had "file[d] an appropriate motion, notice[d] the matter for hearing, and present[ed] their evidence."

The trustee then offered his version of an "appropriate motion," seeking leave to reject the Pinnacle and Opticom leases on the ground that the subject property was no longer property of the estate. CH SP, meanwhile, formally moved for a determination that the property was free and clear of the leases. Pinnacle and Opticom did not object to the trustee's motion, which was granted. They did, however, renew their previous arguments as objections to CH SP's motion.

After a two-day evidentiary hearing on that motion, the bankruptcy court made the following findings of fact:

- Pinnacle had not operated a restaurant on the property since 2011;

- Pinnacle's rent was far below the property's fair market rental value of $40,000 to $100,000 per year;

- Opticom's lease was not recorded;

- the leases were executed "at a time when all parties involved were controlled by James J. Dolan";

- the leases were the subject of bona fide disputes;

- Citigroup's mortgage was senior to the leases; and

- the leases were not protected from foreclosure of the underlying mortgage by subordination or non-disturbance agreements.

It further observed that Pinnacle and Opticom had not requested adequate protection for their leasehold interests prior to sale, and had at no time provided any evidence that they would "suffer any economic harm if their possessory interests [we]re terminated."

Based on those findings, the bankruptcy court—applying what it called a "case-by-case, fact-intensive, totality of the circumstances, approach"—held that the sale was free and clear of the Pinnacle and Opticom leases. Pinnacle and Opticom appealed to the district court, which affirmed.[3] In a

---

[3] In addition, Pinnacle and Opticom moved the bankruptcy court for an order awarding them monetary compensation as "adequate protection"

brief opinion, the district court held that the sale extinguished the leases because the foreclosure of a mortgage would, under Montana law, terminate any leasehold interests junior to the mortgage. This appeal followed.

## II

The principal issue is whether the Pinnacle and Opticom leases survived the sale of the property to CH SP.[4] Because that issue is ultimately one of statutory interpretation, we review the bankruptcy court's decision de novo. *See Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009); *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir. 1993) ("We independently review the bankruptcy court's decision and do not give deference to the district court's determinations.").

As we noted at the outset, the issue brings two sections of the Code into apparent conflict. Section 363 authorizes the trustee to sell property of the estate, both within the ordinary

---

for their "divested interests" in the property. The bankruptcy court never ruled on that motion.

[4] In reaching the merits, we reject CH SP's argument that the case is moot because the sale was approved and consummated. "The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m). By its terms, section 363(m) preserves *the validity* of a sale challenged on appeal. Although Pinnacle and Opticom seek a determination that their leaseholds survived the sale to CH SP, they have not asked us to undo the sale. Therefore, the outcome of the appeal will not affect the sale's validity.

course of business, *see* 11 U.S.C. § 363(c), and outside it, *see id.* § 363(b).[5]  Sales may be "free and clear of any interest in such property of an entity other than the estate," *id.* § 363(f), but only if

> (1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)  such entity consents;
>
> (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*  Upon the request of a party with an interest in the property, the bankruptcy court "shall prohibit or condition such . . . sale . . . as is necessary to provide adequate protection of such interest."  *Id.* § 363(e).

Meanwhile, section 365 of the Code authorizes the trustee, "subject to the court's approval," to "assume or reject

---

[5] Sales in the ordinary course of business do not require prior notice and court approval, while sales outside the ordinary course of business do. *Compare* 11 U.S.C. § 363(c) *with id.* § 363(b).  The sale of SPH's property was outside the ordinary course of business.

any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Subsection (h) makes special provision for rejected leases under which the debtor is the lessor:

> (i)  if the rejection by the trustee amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection; or

> (ii)  if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law.

The crux of this dense statutory language is that the rejection of an unexpired lease leaves a lessee in possession with two options: treat the lease as terminated (and make a claim against the estate for any breach), or retain any rights—including a right of continued possession—to the extent those rights are enforceable outside of bankruptcy.

The statutes frequently operate in isolation. Many bankruptcies will involve a sale of property unencumbered by a lease, and many will involve the rejection of a lease on property that the trustee does not intend to sell. But when both provisions come into play—that is, when the trustee proposes to sell property free and clear of encumbrances, and one of the encumbrances is an unexpired lease—federal courts have addressed the resulting dilemma in different ways.

A.  The "Majority" Approach

Several bankruptcy courts have held that sections 363 and 365 conflict when they overlap because "each provision seems to provide an exclusive right that when invoked would override the interest of the other." *In re Churchill Props.*, 197 B.R. 283, 286 (Bankr. N.D. Ill. 1996); *see also In re Haskell, L.P.*, 321 B.R. 1, 8–9 (Bankr. D. Mass. 2005); *In re Taylor*, 198 B.R. 142, 164–66 (Bankr. D.S.C. 1996); *cf. In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr. S.D. Ind. 1982). Those courts—which constitute a majority of the courts to have addressed the issue—hold that section 365 trumps section 363 under the canon of statutory construction that "the specific prevails over the general." *In re Churchill Props.*, 197 B.R. at 288. They further reason that "the legislative history regarding § 365 evinces a clear intent on the part of Congress to protect a tenant's estate when the landlord files bankruptcy," *In re Taylor*, 198 B.R. at 165 (citing S. Rep. No. 95-989, at 60 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5846), and that the protection "would be nugatory," *In re Churchill Props.*, 197 B.R. at 288, if the property could be sold free and clear of the leasehold under section 363.

B.  The "Minority" Approach

The only circuit court to have addressed the issue reached a different conclusion based exclusively on the statutory text. In *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp. & Qualitech Steel Holdings Corp.)*, 327 F.3d 537 (7th Cir. 2003), the Seventh Circuit observed that "the statutory provisions themselves do not suggest that one supersedes or limits the other."  *Id.* at 547.

The court then examined the scope of each statute. Section 363, it reasoned, confers a right to sell property free and clear of "any interest," without excepting from that authority leases entitled to the protections of section 365.  *See id.*  Section 365, by contrast, has a more "limited scope":

> Section 365(h) . . . focuses on a specific type of event—the rejection of an executory contract by the trustee or debtor-in-possession—and spells out the rights of parties affected by that event. It says nothing at all about sales of estate property, which are the province of section 363.

*Id.*

Again focusing on the statutory text, the court noted that lessees are entitled to seek "adequate protection" under section 363(e).  "Lessees . . . are therefore not without recourse in the event of a sale free and clear of their interests. They have the right to seek protection under section 363(e), and upon request, the bankruptcy court is obligated to ensure that their interests are adequately protected."  327 F.3d at 548.

Based on the statutes' different scopes, the court concluded that they did not conflict:

> Where estate property under lease is to be sold, section 363 permits the sale to occur free and clear of a lessee's possessory interest—provided that the lessee (upon request) is granted adequate protection for its interest.  Where the property is not sold, and the [estate] remains in possession thereof but chooses to reject the lease, section 365(h) comes into play and the lessee retains the right to possess the property.  So understood, both provisions may be given full effect without coming into conflict with one another and without disregarding the rights of lessees.

*Id.*

## C.  Our Approach

We must "read the statutes to give effect to each if we can do so while preserving their sense and purpose."  *Watt v. Alaska*, 451 U.S. 259, 267 (1981).  We can easily do so here.  Based on our reading—and, in particular, a proper understanding of the concept of "rejection"—we agree with the Seventh Circuit that sections 363 and 365 do not conflict.

Although undefined in the Code, a "rejection" is universally understood as an affirmative declaration by the trustee that the estate will not take on the obligations of a lease or contract made by the debtor.  *See, e.g.*, *Eastover Bank for Sav. v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994).  A sale of property free

and clear of a lease may be an effective rejection of the lease in some everyday sense, but it is not the same thing as the "rejection" contemplated by section 365.

In sum, section 363 governs the sale of estate property, while section 365 governs the formal rejection of a lease. Where there is a sale, but no rejection (or a rejection, but no sale), there is no conflict.

In some circumstances, a trustee's failure to act is deemed a rejection. *See* 11 U.S.C. §§ 365(d)(1) (failure to assume or reject residential lease within sixty days in liquidation bankruptcy deemed a rejection), 365(d)(4)(A) (failure to assume or reject nonresidential lease within 120 days deemed a rejection if the debtor is the lessee). But those circumstances are not present here, and the parties agree that the Pinnacle and Opticom leases were not "rejected" prior to the sale. Under our interpretation, then, section 365 was not triggered.[6]

We base our interpretation principally on the reasons given by the Seventh Circuit. To that court's sound textual analysis, we add the following observations to mitigate the concern that an attempt to harmonize the two statutes "arguably results in the effective repeal of § 365(h)." *Dishi & Sons*, 510 B.R. at 704.

---

[6] It is, of course, possible for a trustee to formally reject a lease and then propose to sell the property subject to the (rejected) lease. *See Dishi & Sons v. Bay Condos, LLC*, 510 B.R. 696, 704 (S.D.N.Y. 2014) (noting that *Qualitech* "conveniently" dealt with a situation "where a free and clear sale occurred without any formal assumption or rejection taking place"). That is not what happened here, and so we have no occasion to address the interplay between sections 363 and 365 in such circumstances.

First, we note the mandatory language of section 363(e). A bankruptcy court *must* provide adequate protection for an interest that will be terminated by a sale if the holder of the interest requests it.  Moreover, "adequate protection" includes any relief—other than compensation as an administrative expense—that will "result in the realization by such entity of the indubitable equivalent" of the terminated interest. 11 U.S.C. § 361(3).  In *Dishi & Sons*, the district court concluded that adequate protection could take the form of continued possession.  *See* 510 B.R. at 711–12.  Since Pinnacle and Opticom did not ask for adequate protection until after the sale had taken place—not, indeed, until they had appealed to the district court, *see supra* note 2—the question of what protection the bankruptcy court could have or should have awarded is not before us.  Still, we think it worth mentioning that the broad definition of adequate protection makes it a powerful check on potential abuses of free-and-clear sales.

Second, we emphasize that section 363(f) authorizes free-and-clear sales only in certain circumstances.  The bankruptcy court did not specify which circumstance justified the sale in this case, stating only that Pinnacle and Opticom "d[id] not dispute that at least one provision of § 363(f) was satisfied."  We, on the other hand, focus on 11 U.S.C. § 363(f)(1), which authorizes a sale if "applicable nonbankruptcy law permits sale of such property free and clear of such interest."  11 U.S.C. § 363(f)(1).

Under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent lease on the mortgaged property.  *See Ruby Valley Nat'l Bank v. Wells Fargo Delaware Trust Co.*, 317 P.3d 174, 178 (Mont. 2014);

*Williard v. Campbell*, 11 P.2d 782, 787 (Mont. 1932).[7] SPH's bankruptcy proceeded, practically speaking, like a foreclosure sale—hardly surprising since its largest creditor was the holder of the note and mortgage on the property. Indeed, had SPH not declared bankruptcy, we can confidently say that there would have been an actual foreclosure sale. Such a sale would have terminated the Pinnacle and Opticom leases. Section 363(f)(1) does not require an actual or anticipated foreclosure sale. It is satisfied if such a sale would be legally permissible.

In *Dishi & Sons*, the district court held that section 363(f)(1) "refers not to foreclosure sales, but rather only to situations where the owner of the asset may, under nonbankruptcy law, sell an asset free and clear of an interest in such asset." 510 B.R. at 710 (citation and internal quotations omitted). While we acknowledge that bankruptcy protection is often sought "for the very purpose of avoiding the less favorable consequences of foreclosure," *id.* at 709, the protection is generally for the debtor's benefit. We find it significant that section 365 recognizes appurtenant rights conferred by a lease "to the extent that such rights are enforceable under applicable nonbankruptcy law," 11 U.S.C. § 365(h)(1)(A)(ii), and discern from that language a clear intent to protect lessees' rights outside of bankruptcy, not an intent to enhance them. We see no reason to exclude the law governing foreclosure sales from the analogous language in section 363(f)(1).

---

[7] Montana law embodies the general rule of property law, except that Montana law allows the tenant to remain in possession during any period of redemption, while under the general rule the lease terminates immediately upon the sale. *See Williard*, 11 P.2d at 787. The distinction is immaterial for our purposes.

Our analysis highlights a limitation inherent in the "majority" approach.  We agree that section 365 embodies a congressional intent to protect lessees.  But that intent is not absolute; it exists alongside other purposes and sometimes conflicts with them.  To some extent, protecting lessees reduces the value of the estate—property presumably fetches a lower price if it is subject to a lease—and is therefore contrary to the goal of "maximizing creditor recovery," *Qualitech*, 327 F.3d at 548, another core purpose of the Code. The statutory text is the best assurance we have that we are balancing competing purposes in the way Congress intended.

### III

Section 363(f)(1) authorized the sale of SHP's property free and clear of the Pinnacle and Opticom leases.  Since the trustee did not reject the leases, section 365 was not implicated.  Accordingly, the judgment of the district court is

**AFFIRMED.**