DA 13-0251

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 16

RUBY VALLEY NATIONAL BANK,

      Plaintiff and Appellee,

   v.

WELLS FARGO DELAWARE TRUST
COMPANY, N.A.; VERICREST FINANCIAL, INC.,

      Defendants and Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District, In and For the County of Madison, Cause No. DV 29-11-96 Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

            Cassie R. Dellwo, Jason J. Henderson; Mackoff Kellogg Law Firm; Dickinson, North Dakota

      For Appellee:

            Andrew P. Suenram, Adam M. Shaw; Erb & Suenram, PLLC; Dillon, Montana

                    Submitted on Briefs:  December 18, 2013
                                Decided:  January 21, 2014

Filed:

               _____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Wells Fargo Delaware Trust Co. (Wells Fargo) appeals from the order of the Fifth Judicial District Court, Madison County, denying its motion for summary judgment and granting summary judgment to Ruby Valley National Bank (RVNB). Wells Fargo and RVNB both claim beneficiary interests under separate trust indentures on the same real property. RVNB obtained and recorded a Deed of Trust (DOT) on the property subsequent to a previously recorded DOT. RVNB filed for judicial foreclosure of its interest in the property and sought identification of the beneficiary under the first DOT, because it had been assigned multiple times. Wells Fargo was the only named defendant to answer and claim to be the beneficiary of the first DOT. The District Court held that RVNB's DOT was entitled to priority over the earlier DOT held by Wells Fargo. We reverse.

¶2      We restate and address the following issue:

¶3      *Did the District Court err by determining that RVNB's lien held priority over Wells Fargo's lien, and granting summary judgment to RVNB?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      This case involves real property located in Madison County. The subject property was owned by Cherie Lewis (Cherie), but on February 2, 2005, Cherie conveyed the property to her daughter, Beckie Lewis (Beckie), by recorded deed. Beckie mortgaged the property by executing a DOT that secured a promissory note in the amount of $279,000 in favor of Elliot Ames Nevada, Inc. (Indenture 1). Indenture 1 was entered

2

pursuant to the Small Tract Financing Act (STFA), named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary, and was recorded on February 3, 2005.[1] Subsequently, Beckie executed a second DOT to secure a promissory note for $102,057 to RVNB. This DOT (RVNB Indenture) was recorded on December 29, 2005.

¶5    In 2009, Cherie filed an action against Beckie, alleging breach of an oral contract. The facts of that matter are irrelevant to this proceeding, but the judgment entered therein quieted title to the subject property in Cherie and terminated all of Beckie's claimed interest in the property. Elliot Ames Nevada, Inc., MERS, and RVNB were not made parties to the action, and the court's order specifically restored title in Cherie as previously encumbered. Shortly thereafter, Beckie died in a car accident.

¶6    On June 4, 2010, MERS assigned its interest in Indenture 1 and the underlying promissory note to Flagstar Bank, FSB. This assignment was recorded on June 15, 2010. Flagstar Bank subsequently assigned its rights in the DOT and note to U.S. Bank Trust

---

[1] No challenge was made in this proceeding to MERS' status as beneficiary, and we will not consider that issue. See *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, 373 Mont. 1, 313 P.3d 839. The Dissent argues that Wells Fargo lacks standing in light of our holding in *Pilgeram*, Dissent, ¶ 29, but we disagree. To conclude that Wells Fargo lacks standing is to read *Pilgeram* as saying that MERS could never assign any interest in a DOT. However, *Pilgeram* was limited to the issue of whether or not MERS met the statutory definition of "beneficiary" under the STFA. The Court declined to decide whether MERS could execute an assignment as the agent of the true beneficiary because the issue had not been properly preserved by the parties. Pilgeram, ¶ 20. Thus, because *Pilgeram* did not definitively determine MERS' ability to assign a DOT, and the parties here have not litigated the issue, it would be premature and improper to summarily conclude that Wells Fargo is forever barred from asserting any interest in Indenture 1. Further, Wells Fargo is not seeking to foreclose in this action. If and when Wells Fargo pursues foreclosure, the interest flowing to it down the chain of transactions from MERS may well be raised and challenged by the property owner. In the present case, the original "true" beneficiary, Elliot Ames Nevada, Inc., was not served with process and made a party, rendering impossible a ruling that would purport to invalidate Indenture 1 or eliminate its priority based solely on MERS' assignment.

National Association as trustee for LSF7 NPL V Trust, executed by Vericrest Financial, Inc., as attorney in fact for Flagstar Bank. This assignment was recorded on August 10, 2011. U.S. Bank assigned the DOT and note to Wells Fargo as trustee for Vericrest Opportunity Loan Trust 2011-NPL1. This assignment was recorded on September 21, 2011. Vericrest Financial, Inc. is the current servicer of Indenture 1.

¶7 RVNB filed for judicial foreclosure of its interest in December of 2011, naming Cherie, Beckie's Estate, Wells Fargo, U.S. Bank, Vericrest Financial, Flagstar Bank, and MERS as party defendants. RVNB's complaint set forth the history of transactions and the recordings on the subject property, attaching copies of both trust indentures and all recorded assignments of Indenture 1. The complaint asked the District Court to determine the correct identity of the beneficiary of Indenture 1, claiming that "three allegedly separate entities hold themselves out to be the beneficiary." RVNB also requested an order declaring it had priority "over all other lienholders." RVNB did not state any facts that facially raised a question about the priority of Indenture 1, but rather affirmatively pled that Indenture 1 was recorded almost a year before the RVNB Indenture.

¶8 Though served with process, U.S. Bank, Flagstar Bank, and MERS failed to answer the complaint, and default judgment was entered against each of them. Wells Fargo was the only asserted beneficiary to answer the complaint, and thus is the only entity in the litigation claiming to be the beneficiary of Indenture 1. Cherie and Beckie's Estate moved for summary judgment on various grounds, but their claims were denied

and judgment was entered against them in favor of RVNB. Neither Cherie nor Beckie's Estate appeal.

¶9 Wells Fargo filed its trial witness and exhibit list ten days after the deadline set by the court's scheduling order. The District Court granted RVNB's motion to strike Wells Fargo's trial witness and exhibit list as untimely and vague. Wells Fargo moved for summary judgment on the basis that, as the holder of the first-in-time interest, it had priority over RVNB's interest. RVNB filed a cross-motion for summary judgment, asserting its lien was entitled to priority because Wells Fargo had failed to make a compulsory counterclaim to foreclose its interest. The District Court granted summary judgment in favor of RVNB, holding that Wells Fargo had not proven the elements necessary for judicial foreclosure, and was unable to do so because its trial witness and exhibit list had been stricken. Wells Fargo appeals.

## STANDARD OF REVIEW

¶10 We review a district court's ruling on a motion for summary judgment de novo, applying the same M. R. Civ. P. 56 criteria as the district court. *Deschamps v. Treasure State Trailer Court, Ltd.*, 2011 MT 115, ¶ 12, 360 Mont. 437, 254 P.3d 566. Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). We review the district court's conclusion that the moving party is entitled to judgment as a matter of law for correctness. *Deschamps*, ¶ 12.

**DISCUSSION**

¶11 As a general rule, "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation." Section 71-3-113, MCA. However, this general rule can be altered under narrow circumstances by recording requirements. Montana has a "'race-notice' recording system." *Earl v. Pavex, Corp.*, 2013 MT 343, ¶ 18, 372 Mont. 476, 313 P.3d 154. A subsequent lienholder's interest holds priority over an earlier lienholder's interest only if the subsequent holder lacked notice of the earlier interest and duly recorded its interest first. *Earl*, ¶ 18. Proper filing of an interest in real property as prescribed by law is constructive notice of the interest to subsequent purchasers and mortgagees. Section 70-21-302(1), MCA.

¶12 RVNB has not alleged that it did not have notice of Indenture 1 or that any other special exception with regard to priority applies. Rather, RVNB argues that Wells Fargo was obligated to assert a compulsory counterclaim for judicial foreclosure in response to RVNB's complaint and that Wells Fargo's failure to do so resulted in the loss of its indenture's priority. The authority cited by RVNB for this position is *Zimmerman v. Kevin Connor Construction*, 1998 MT 131, ¶ 9, 289 Mont. 148, 958 P.2d 1195. In *Zimmerman*, Kevin Connor Construction (Connor) had foreclosed on a construction lien against Zimmerman in a prior action. Zimmerman subsequently brought a separate suit against Connor alleging negligence within the same construction work that resulted in the foreclosed lien. *Zimmerman*, ¶¶ 2-3. We affirmed summary judgment for Connor on the ground that Zimmerman's negligence claims were compulsory counterclaims in the prior

6

action. *Zimmerman*, ¶ 19. Clearly, the separate trust indentures recorded here do not arise out of the same transaction or occurrence as did the claims at issue in the *Zimmerman* litigation and *Zimmerman* is not controlling.

¶13 We addressed the necessity of filing a compulsory counterclaim for foreclosure of a trust indenture in *Deschamps*. There, we held that a nonjudicial foreclosure of property is "not the type of claim contemplated by M. R. Civ. P. 13(a)" because a counterclaim generally requires redress by the court, while nonjudicial foreclosure is a process that does not require court involvement. *Deschamps*, ¶ 14. The plain language of the STFA permits a trust indenture beneficiary to determine whether to proceed with or without court involvement. *Deschamps*, ¶ 15. Thus, nonjudicial foreclosure of an indenture is not waived by failure to counterclaim for judicial foreclosure in a legal action. *Deschamps*, ¶ 16.

¶14 Although the District Court concluded it was unnecessary to determine whether Wells Fargo was compelled to counterclaim for judicial foreclosure, the court nonetheless reasoned that Wells Fargo was unable to "prove the required elements necessary" to make out a prima facie case for judicial foreclosure. It therefore determined that RVNB's indenture was entitled to priority over Wells Fargo's indenture. The court's order did not address the reason Wells Fargo was required to demonstrate the elements of judicial foreclosure when its interest was secured by a trust indenture that could be foreclosed nonjudicially under the STFA.

7

¶15 The District Court's order failed to recognize certain principles of judicial foreclosure. A foreclosure extinguishes or "closes" the mortgagor's (or "grantor's") interest and terminates junior interests in the property that are either named in the foreclosure action or unnamed but against whom the proceeding is deemed conclusive by operation of statute. *See* §§ 71-1-315(1)(a)(i),(v), -222(3), MCA. "A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law." *Restatement (Third) of Property*: *Mortgages* § 7.1 (1997). As the Court of Appeals of Washington recently explained:

> "[T]he lien of the junior encumbrancers cannot follow the land because they are parties to the record and the [foreclosure] decree cuts them off from the land, but for that very reason their rights may be asserted against the surplus fund in court." 1 Garrard Glenn, *Mortgages, Deeds of Trust, and Other Security Devices as to Land* § 86.3, 520 ([Michie Co.] 1943); *accord United States v. Sage*, 566 F.2d 1114, 1114-15 (9th Cir. 1977) ("Foreclosure affects the rights of all mortgagees junior to the foreclosing mortgagee and requires them to look to the proceeds for satisfaction, but it has no effect whatsoever upon the interest of senior mortgagees.").

*Worden v. Smith*, 2013 Wash. App. LEXIS 2815, ¶ 23 (Wash App. Div. 3 December 12, 2013). *See also Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 95 (Tex. App.– Texarkana 2011) (citing 59 C.J.S. *Mortgages* § 549 (1998); 59A C.J.S. *Mortgages* § 601; other citations omitted) ("Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed. In fact, the general rule is that the successful bidder at a junior lien foreclosure takes title subject to the prior liens.").

¶16　Thus, a senior lien is unaffected by foreclosure of a junior lien, and a purchaser at the foreclosure sale of a junior lienholder will take the property subject to the senior lien. "Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed." *Restatement (Third) of Property*: *Mortgages* § 7.1. The Comment to this Restatement section adds "[i]t is . . . axiomatic that the title deriving from a foreclosure sale, whether judicial or by power of sale, will be subject to all mortgages and other interests that are senior to the mortgage being foreclosed." *Restatement (Third) of Property*: *Mortgages* § 7.1 cmt. a.[2]

¶17　These principles correspondingly impact the issue of what parties are "necessary" in a judicial foreclosure proceeding. It has long been a general rule that "persons holding mortgages or liens prior to the mortgage under foreclosure are neither necessary nor proper parties to the action. A prior mortgagee may elect for himself the time and manner of enforcing his security. He cannot be compelled to be a party to a suit by a junior encumbrancer foreclosing his lien." *Cone Bros. Const. Co. v. Moore*, 141 Fla. 420, 426 (1940) (citing *Emigrant Industrial Sav. Bank v. Goldman*, 75 N.Y. 127 (1878)). As has been explained:

---

[2] The Restatement provides an example, which parallels the facts of the case at bar: "Mortgagor borrows money from Mortgagee-1 and gives Mortgagee-1 a promissory note secured by a mortgage on Blackacre. The mortgage is immediately recorded. Mortgagor then borrows money from Mortgagee-2 and gives Mortgagee-2 a promissory note secured by a mortgage on Blackacre. The latter mortgage is immediately recorded. Mortgagor later defaults in payment on the obligation secured by the mortgage to Mortgagee-2. Mortgagee-2 validly accelerates that obligation and forecloses its mortgage, properly joining or notifying all subordinate parties. The foreclosure sale purchaser owns Blackacre free and clear of Mortgagor's interest, *but subject to Mortgagee-1's mortgage*." *Restatement (Third) of Property*: *Mortgages* § 7.1 illus. 5 (emphasis added).

A senior lienor is not a necessary party because it is not subject to or subordinate to the mortgage being foreclosed. To omit it from a foreclosure suit brought by a junior lienor will not defeat the purposes of foreclosure because the senior lien existed on the land as of the time the mortgage being foreclosed was executed.

Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* vol. 1, § 7.12, 582-83 (3d ed., West Pub. 1993).

*Since a senior mortgagee's interest cannot be affected by an action to foreclose a junior lien, it follows that an attempt to join the senior as a party to such action can be defeated through a timely objection.* Such is the logic of the rule. To it is added the practical reason that the prior mortgagee should be able to choose its own time for selling and not be forced to realize in a market that in its judgment is unfavorable.

Nelson & Whitman, *Real Estate Finance Law* at § 7.14, 590 (emphasis added).

¶18 However, an exception to this general rule is made to permit joinder of a senior lienholder as a party in a foreclosure action for the limited purpose of establishing the "nature and extent of the prior lien." Nelson & Whitman, *Real Estate Finance Law* at § 7.12, 583. This would include determination of priority and calculation of the value of the prior interest when these issues are disputed. *See Richard R. Powell, Powell on Real Property* vol. 4, § 37.37[7] (Michael Allan Wolf ed., LexisNexis 2000) ("If there is doubt as to the precise nature or extent of the claimed superior interest, joinder of its claimant permits the clarification needed for prospective purchasers of the mortgaged interest at the time of sale. Thus, courts have been willing to permit joinder of such parties where such a dispute in priorities exists."); *Restatement (Third) of Property*: *Mortgages* § 7.1 cmt. a ("a foreclosing junior lienor may make the holders of senior liens parties to a

10

judicial foreclosure action for the limited purpose of determining the amounts of those liens.").

¶19 Consequently, because a senior lienholder's interest is unaffected by the foreclosure of the junior lien, Wells Fargo, assuming its lien was prior to RVNB's, was not required to counterclaim for foreclosure of its security interest in order to retain its priority. Its interest would remain as an encumbrance on the property after RVNB's foreclosure sale. The foreclosure buyer would take subject to Wells Fargo's indenture, which Wells Fargo could foreclose at a time of its choosing.

¶20 While RVNB argued, and the District Court essentially agreed, that the "one action rule" contained in the foreclosure statute, *see* § 71-1-222(1), MCA, would prohibit Wells Fargo from later initiating a nonjudicial foreclosure against the subject property, the statute clearly provides otherwise: "The one-action limitation in this section does not prohibit an act or proceeding . . . for the exercise of a power of sale conferred pursuant to the provisions of 71-1-223 or a foreclosure by advertisement and sale pursuant to Title 71, chapter 1, part 3 [STFA]." Section 71-1-222(4)(e), MCA; *see also Deschamps*, ¶ 16.

¶21 Having determined that Wells Fargo was not required to file a counterclaim for foreclosure in order to protect its interest in the property, we now turn to the issue of priority between the parties. The District Court held that, because Wells Fargo's trial witness and exhibit list had been stricken, it was unable to offer any evidence establishing an interest in the property. It further held, without explanation, that the documents offered in support of Wells Fargo's motion for summary judgment were inadequate.

11

¶22 The District Court's conclusion that there was no evidence by which Wells Fargo could establish its interest in the property because Wells Fargo's trial witness and exhibit list had been stricken does not reflect the nature of the record in this case. RVNB itself filed copies of all the relevant recorded documents, including Indenture 1 and subsequent assignments, with its complaint. Documents attached to pleadings are considered part of the pleading. M. R. Civ. P. 10(c); *see also Firelight Meadows, LLC v. 3 Rivers Telephone Coop., Inc.*, 2008 MT 202, ¶ 15, 344 Mont. 117, 186 P.3d 869. RVNB filed a copy of the promissory note underlying Indenture 1 with its response to Wells Fargo's motion for summary judgment and Wells Fargo likewise filed certified copies of all the recorded documents with its second motion for summary judgment. To resolve a motion for summary judgment, a district court is required to examine the "pleadings, the discovery and disclosure materials on file, and any affidavits" to determine whether there were any genuine issues of material fact and whether a party was entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). As the record for this purpose contained Indenture 1, its accompanying promissory note, and the chain of assignments, there was evidence upon which Wells Fargo could rely to support its position on summary judgment.

¶23 Contrary to RVNB's position, we conclude it is possible to identify the present beneficiary of Indenture 1. The documents filed by both RVNB and Wells Fargo clearly indicate a chain of assignment of Indenture 1 from MERS to Flagstar Bank; then Flagstar Bank to U.S. Bank (as trustee for LSF7 NPL V Trust); and finally from U.S. Bank (as

12

trustee for LSF7 NPL V Trust) to Wells Fargo (as trustee for Vericrest Opportunity Loan Trust 2011-NPL1). MERS, Flagstar Bank, and U.S. Bank did not appear in this action to contest any of these assignments. Further, RVNB has presented no evidence that would dispute the signed, notarized, and recorded documents. The undisputed facts establish that Wells Fargo, as trustee for Vericrest Opportunity Loan Trust 2011-NPL1, is the current beneficiary of Indenture 1.

¶24 RVNB further argues that there is no evidence the promissory note was assigned along with the DOT. It also asserts that the validity of the promissory note itself is now disputed because Beckie is deceased and, because Wells Fargo's trial witness and exhibit list was stricken, no one from Wells Fargo or any other bank can testify to the note's validity. However, the recorded assignments all state that the assigning party "has ENDORSED said Trust Indenture and Note and does hereby ASSIGN, SELL CONVEY AND DELIVER" to the assignee "all right, title and interest in said Note and all rights accrued or to accrue under said Trust Indenture." (Emphasis in original.) Thus, the documents facially demonstrate that both the promissory note and the DOT were assigned down the same chain previously detailed, and there is no evidence to the contrary.

¶25 After a signed copy of the promissory note was submitted into the record, the burden shifted to RVNB, as the party opposing summary judgment, to present "substantial evidence, as opposed to mere denial, speculation, or conclusory statements" to establish the existence of a genuine issue of material fact as to the note's validity.

13

*Peterson v. Eichhorn*, 2008 MT 250, ¶ 13, 344 Mont. 540, 189 P.3d 615. Wells Fargo did not have the burden of establishing the validity of the promissory note in this proceeding because it is not seeking to foreclose. Rather, its burden was to establish an earlier recorded indenture in its favor, a fact that has been demonstrated. While Wells Fargo did not prove the precise amount outstanding under the note and indenture, RVNB did not request that the District Court determine this amount.

¶26 Finally, RVNB offers that this Court should not allow "non-judicial foreclosures of security interests that are of questionable authenticity" because such foreclosures will "put[ ] the Small Tract Financing Act at risk." However, Wells Fargo has not here sought nonjudicial foreclosure. Further, no claim has been made that Wells Fargo's indenture, recorded nearly a year before RVNB's indenture, is invalid or has been discharged. The recorded documents clearly demonstrate that Wells Fargo, as trustee for Vericrest Opportunity Loan Trust 2011-NPL1, is the current beneficiary of Indenture 1. Thus, the undisputed facts establish that Wells Fargo is entitled to judgment as a matter of law that its indenture holds priority over RVNB's indenture. RVNB may foreclose on the property, following proper procedure, but the property, when sold, will remain subject to Wells Fargo's senior indenture.

¶27 Reversed and remanded for entry of judgment consistent herewith.


/S/ JIM RICE


14

We concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT

Chief Justice Mike McGrath dissents.

¶28    I dissent.  The Court declines to address the status of MERS as the purported beneficiary of the Deed of Trust later assigned to Wells Fargo.  Opinion, ¶ 4 n. 1.  The parties have not challenged the validity of the beneficiary designation.  Questions of standing, however, must be addressed even if not raised by a litigant.  *Dick Anderson Constr., Inc. v. Monroe Constr. Co.*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675.  Standing is a jurisdictional requirement.  *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80.  A court does not have the power to resolve a case brought by a party with no personal stake in the outcome.  *Heffernan*, ¶ 29.

¶29    Wells Fargo's stake in the outcome of this case is directly traceable to the original designation of MERS as the beneficiary of the Deed of Trust.  MERS assigned its beneficial interest to Flagstar Bank.  Flagstar Bank assigned that interest to U.S. Bank, which in turn assigned that interest to Wells Fargo.  Wells Fargo "stepped into [MERS'] shoes," assuming those rights, and only those rights, previously held by MERS.  *See Watts v. HSBC Bank U.S. Trustee*, 2013 MT 233, ¶ 18, 371 Mont. 295, 308 P.3d 57.  We have recently held that MERS "does not meet the STFA's definition of 'beneficiary.' " *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 18, 373 Mont. 1, 313 P.3d

15

839.    The beneficiary of a deed of trust must be "the entity to whom the secured obligation flows." *Pilgeram*, ¶ 17.  That entity is the lender, not an electronic registry such as MERS.  *Pilgeram*, ¶ 18.  MERS was not a valid beneficiary and had no interest in the Deed of Trust.  The chain of assignments leading from MERS to Wells Fargo was empty.  Wells Fargo has no stake in the outcome of this case, and therefore lacks standing.  Further, because Wells Fargo has no interest, its interest certainly cannot have priority over that of RVNB.

¶30    I respectfully dissent from those portions of the Opinion declining to address the status of MERS and determining Wells Fargo's purported indenture to have priority over the indenture held by RVNB.

/S/ MIKE McGRATH